**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**SAURIN POPAT, M.D.,**

                                        **Plaintiff,**

**v.**                                                                    **15-CV-1052W(Sr)**

**ELAD LEVY, MD.,**

**THE STATE UNIVERSITY OF NEW YORK**
**AT BUFFALO**

**UNIVERSITY AT BUFFALO SCHOOL**
**OF MEDICINE AND BIOSCIENCE,**

**UNIVERSITY AT BUFFALO**
**NEUROSURGERY GROUP,**

**UNIVERSITY AT BUFFALO**
**NEUROSURGERY, INC.,**

**and**

**KALEIDA HEALTH,**

                                        **Defendants.**

_____


**<u>DECISION AND ORDER</u>**

        This matter was referred to the undersigned by the Hon. Elizabeth A.

Wolford, in accordance with 28 U.S.C. § 636(b), for all pretrial matters. Dkt. #17.


        Plaintiff Saurin Popat is a medical doctor specializing in otolaryngology

and the Director of Head and Neck Surgery for Delaware Medical Group, P.C.

("Delaware Medical"). Dkt. #60, ¶¶ 32-33. Plaintiff's Curriculum Vitae indicates that he

was Director of Head & Neck Surgical Oncology and Attending Surgeon at the

University of Rochester Medical Center ("URMC") and Assistant Professor in the Department of Otolaryngology at the University of Rochester School of Medicine and Dentistry from 2000 to 2006 and Assistant Professor of Surgical Oncology and Attending Surgeon at Roswell Park Comprehensive Cancer Center ("Roswell"), from 2006 to 2009. Dkt. #107, p.103. Plaintiff was appointed to the position of Clinical Assistant Professor of Otolaryngology at State University of New York at Buffalo School of Medicine and Bioscience ("UB Medical School"), on December 1, 2009 and remains in that position currently. Dkt. #107, p.103. Upon recommendation by Elad Levy, M.D., Chief of Neurosurgery at Kaleida Health and Chair of Neurosurgery at UB Medical School on December 18, 2013, plaintiff was also appointed to the position of Clinical Assistant Professor of Neurosurgery at UB Medical School. Dkt. #60, ¶ 18 & Dkt. #108-1, p.142.

By letter dated July 23, 2014, Dr. Levy terminated plaintiff's position with the Department of Neurosurgery at UB Medical School effective August 29, 2014. Dkt. #108-1, p.144. Dr. Levy claims that he terminated plaintiff from his position because of plaintiff's attempt to schedule a collaborative surgery when Dr. Levy would be away and because plaintiff deviated from the agreed upon protocol during surgery on July 22, 2014. Dkt. #110-5, p.3. Plaintiff's second amended complaint alleges that Dr. Levy terminated plaintiff in retaliation for his complaints of a hostile work environment and discrimination based upon race and national origin and that Dr. Levy subsequently exerted pressure upon other doctors to cease patient referrals to plaintiff and interfere with plaintiff's employment relationship with Delaware Medical Group. Dkt. #60.

Plaintiff asserts the following causes of action: (1) discrimination on the basis of race and national origin and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq*. ("Title VII"); (2) retaliation in violation of Title VII; (3) discrimination on the basis of race and national origin,

retaliation, and interference with plaintiff's employment relationship with Delaware Medical Group in violation of the New York State Human Rights Law, Executive Law § 290, *et seq*., ("NYSHRL"); (4) discrimination and retaliation in violation of 42 U.S.C. § 1981; (5) discrimination and retaliation in violation of 42 U.S.C. § 1983; and (6) common law tortious interference with contract, employment and prospective economic advantage. Dkt. #60. Plaintiff claims loss of wages, benefits, pecuniary opportunities and promotional opportunities and seeks an award of front-pay, back-pay, compensation for loss of future salary and benefits and an award of punitive damages, as well as damages for mental anguish, humiliation, embarrassment and emotional injury. Dkt. #60. Dr. Levy and UBNS assert a counterclaim for slander. Dkt. #92.

Plaintiff moves: (1) to quash subpoenas served upon URMC and Roswell; (2) to compel responses to certain discovery demands served upon Dr. Levy and University at Buffalo Neurosurgery, Inc. ("UBNS"); and (3) for a protective order.  Dkt. #102. Defendants State University of New York at Buffalo ("SUNY Buffalo"), and University at Buffalo School of Medicine and Bioscience ("UB Medical School'), move to compel discovery responses. Dkt. #108. Although they did not file a notice of motion, Dr. Levy and UBNS also seek to compel plaintiff to respond to certain document demands and interrogatories. Dkt. #110.

### Plaintiff's Motion to Quash

On June 14, 2019, Dr. Levy and UBNS served notice, pursuant to Rule 45(a)(4) of the Federal Rules of Civil Procedure, that they intended to serve subpoenas seeking personnel records from plaintiff's prior employers, URMC and Roswell. Dkt. #102-2, pp.2 & 6. The subpoenas attached to the notice set a return date of July 13, 2019. Dkt. #102-2, pp.3 & 7. The subpoenas sought production of all documents regarding Dr. Popat, including, but not limited to: employment file; credentialing file; academic ranking; letter of acceptance; reviews by residents; reviews by administration;

letters of termination; letters of resignation; documentation relating to severance package; and orientation materials signed by Dr. Popat. Dkt. #102-2, pp.3 & 7.

By email dated June 17, 2019, plaintiff's counsel objected to the subpoenas as over broad and irrelevant. Dkt. #102-2, p.13. Defendants disagreed, claiming plaintiff's claim of damage to his academic career "raises questions about his prior academic jobs at both Rochester and Roswell Park." Dkt. #102-2, p.11. Following a conference call to discuss the subpoenas, defendants clarified their position that they are

> entitled to all records, good or bad, regarding your client[']s academic career prior to 2014. He has made an issue of his academic career. The records are absolutely relevant. This is not a fishing expedition. If he left on exemplary terms, then the records will clearly show that.

Dkt. #102-2, p.16.

By letter dated August 27, 2019, defendants advised plaintiff that the Court declined to schedule a conference regarding the subpoenas and that defendants would proceed with service upon URMC and Roswell. Dkt. #102-2, p.26. The subpoenas were served on August 28, 2019 with a return date of September 20, 2019, however, plaintiff did not receive a copy of them and only became aware that they had been served when affidavits of service were filed with the Court on September 4, 2019. Dkt. ##99, 100 & 102-2, pp.28-29 & 38. Defendants re-served the subpoenas with copies to plaintiff on August 28, 2019. Dkt. #102-2, pp.38 & 41-44.

By letters dated September 4, 2019, plaintiff advised URMC and Roswell of his intention to move to quash the subpoenas. Dkt. #102-2, pp.35-36.

By letter dated September 6, 2019, Roswell objected to the subpoena on the grounds that the employment records of Roswell employees are protected from

disclosure pursuant to New York's Personal Privacy Protection Law and New York Public Health Law protects information regarding privileging or credentialing of medical staff. Dkt. #106-1. Roswell also argues that Article 6-A of the Public Officers Law prevents state agencies from disclosing personal information of employees without authorization from the employee or a court ordered subpoena. Dkt. #106-1, p.2.

The motion to quash was filed on September 9, 2019. Dkt. #102. Defendants have since agreed to narrow the scope of the subpoenas to exclude plaintiff's credentialing file and documents related to quality assurance. Dkt. #110-29, p.4. They continue to seek documents relating to plaintiff's hiring, separation, employment duties and responsibilities, teaching responsibilities and any complaints by residents, fellows, medical students and/or staff against plaintiff. Dkt. #110, ¶¶ 59-60.

### Fed. R. Civ. P. 45(a)(4)

Rule 45(a)(4) of the Federal Rules of Civil Procedure provides that if a subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party. "The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things." F.R.C.P. 45 Advisory Committee note to 1991 Amendment Subdivision (b); *See also* F.R.C.P. 45 Advisory Committee note to 2013 Amendment Subdivision (a) ("The amendments are intended to achieve the original purpose of enabling the other parties to object or to serve a subpoena for additional materials."); *See also Davis v. J.P. Morgan Chase & Co.*, No. 01-CV-6492, 2007 WL 142110, at *2 (W.D.N.Y. Jan. 16, 2007) (Failure to provide notice of a  subpoena as required by Rule 45 prevents an opposing party from seeking a protective order before a subpoena is served upon a non-party.).

-5-

Defendants complied with the notice provision of Rule 45(a)(4) on June 14, 2019. Moreover, more than a month later, in the absence of any motion to quash or for a protective order, defendants advised plaintiff that they were proceeding with service of the subpoenas, filed copies of the subpoenas on the docket  and re-served the subpoenas with copies to plaintiff. Thus, this is not a case where plaintiff was deprived of his ability to object to the release of information prior to its disclosure. *Cf. Murphy v. Board of Educ. of Rochester City Sch. Dist.*, 196 F.R.D. 220, 228 (W.D.N.Y. 2000).

Fed. R. Civ. P. 45(d)(3)

Plaintiff argues that the subpoenas are over broad and seek irrelevant, private information from an employer he ceased working for many years prior to July, 2014, the date relevant to this action. Dkt. #102-3, pp.14 & 16. More specifically, plaintiff argues that case law establishes that subpoenas to obtain information to demonstrate poor job performance in an employee's prior employment are not relevant to ascertain an employee's performance in the position from which plaintiff was subsequently terminated. Dkt. #102-3, p.15. Plaintiff argues that his prior medical career is not at issue because he received additional appointments subsequent to his departure from these positions and it was not until Dr. Levy's termination of plaintiff that he began to experience a cessation of surgical referrals and decline in business relationships. Dkt. #102-3, pp.16-17. Moreover, plaintiff argues that his prior employment history has no relevance to the reason given by Dr. Levy for plaintiff's termination, *to wit*, plaintiff's conduct during surgery on July 22, 2014 and plaintiff's interactions with staff at UBNS. Dkt. #102-3, p.17.

Dr. Levy and UBNS argue that plaintiff's reputation at URMC and Roswell is relevant to assessing his claim that his termination from the voluntary faculty appointment with the Department of Nueorsurgery at UB Medical School has damaged

-6-

his academic career and reputation in the medical community and caused a decrease in patient referrals. More specifically, they argue that plaintiff's conduct in teaching cases and in the medical community at large, including his tenure at URMC and Roswell, impact plaintiff's claim to damages. Dr. Levy and UBNS  argue that plaintiff cannot allege that defendants are responsible for damage to plaintiff's reputation without permitting discovery regarding plaintiff's reputation prior to the incident at issue in this complaint. Dkt. #110-29, pp.4-5.

As an initial matter, case law is clear that a party has standing to challenge a subpoena seeking personnel records from a prior employer. *See Dowling v. New York-Presbyterian/Weill Cornell Med. Ctr.*, 19-CV-2114, 2020 WL 1243780, at * 2 (S.D.N.Y. March 16, 2020) (collecting cases).

"The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." *Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998); *See Warnke v. CVS Corp.*, 265 F.R.D.64, 66 (E.D.N.Y. 2010). As amended in 2015, Fed. R. Civ. P. 26(b)(1) provides, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

The Advisory Committee Notes to the 2015 Amendment clarifies that the rule was amended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse."

Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii), a court must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to an undue burden. Whether a subpoena imposes an undue burden depends upon consideration of "relevance, the need of the party for the documents, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Libaire v. Kaplan*, 760 F. Supp.2d 288, 293-94 (E.D.N.Y. 2011). In response to a motion to quash a subpoena, the party issuing the subpoena bears the initial burden of demonstrating that the information sought is relevant and material to the allegations and claims at issue in the proceedings. *Id.* at 291. Thereafter, "the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome." *Id.* The decision whether to quash or modify a subpoena is committed to the sound discretion of the trial court. *Id.*

Personnel records from plaintiff's employment between 2000 and 2009 are not relevant to assessing the validity of the rationale Dr. Levy proffered for terminating plaintiff. *See Dowling,* 2020 WL 1243780, at*3 (personnel records from prior employer have no bearing on whether termination was based upon valid considerations or whether such reasons were pretext for discrimination); *Peddy v. L'O'real USA Inc*., 18-CV-7499, 2019 WL 3926984, at *2 (S.D.N.Y. Aug. 20, 2019) (quashing subpoenas seeking to determine if plaintiff had any issues in her previous positions as irrelevant)*; Walker v. H & M Henner & Mauritz, L.P.*, 16 Civ. 3818, 2016 WL 4742334, at *2 (S.D.N.Y. Sept. 12, 2016) (prior work history has no relevance to whether defendant's actions were racially discriminatory or based on valid considerations); *Henry v. Morgan's Hotel Grp., Inc*., 15-CV-1789, 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) (prior employment history has little if any bearing on whether defendant's action toward plaintiff were based on valid considerations or violated the discrimination laws); *Ireh v. Nassau Univ. Med. Ctr*, No. CV 06-09, 2008

-8-

WL 4283344, at *5 (E.D.N.Y. Sept. 17, 2008) (finding plaintiff's performance during his prior residency bears no relevance to his actual work performance with defendants), *aff'd* 371 Fed. App'x 180 (2010).

Even if Dr. Levy's decision to terminate plaintiff was somehow related to plaintiff's performance at URMC or Roswell, "[e]vidence of plaintiff's propensity to act in a certain manner is inadmissible under Fed. R. Evid. 404(a), which provides in relevant part, '[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith.'" *Lev v. South Nassau Cmtys. Hosp*., CV 10-5435, 2011 WL 3652282, at *2 (E.D.N.Y. Aug. 18, 2011); *See Cooper v. Hill, 12-CV-1227,* 2016 WL 7366976, at *2 (W.D.N.Y. Dec. 20, 2016) ("Courts will tend to grant motions to quash also when requests in subpoenas look too much like requests for improper propensity evidence); *Rodriguez v. NNR Global Logistics USA Inc*., 2016 WL 11673310, at *5 (E.D.N.Y. March 31, 2016) (plaintiff's performance at prior employment bears no relevance to her actual work performance with defendants, particularly where defendants never asserted that decision to terminate was influenced by prior employment); *Henry*, 2016 WL 303114, at *4 (even if defendant's speculation as to plaintiff's lack of truthfulness was warranted, evidence from non-party employers would likely be inadmissible propensity evidence under Rule 404(a)); *Ireh*, 2008 WL 4283344, at *5 (contention that if plaintiff performed poorly at prior residency, he most likely performed poorly during his residency with defendant sought propensity evidence barred by FRE 404(a)). Similarly, Federal Rule of Evidence 608 generally precludes admission of extrinsic evidence "to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. *See Rodriguez,* 2016 WL 11673310, at *4; *Lev,*  2011 WL 3652282, at *2; *Henry*, 2016 WL 303114, at *3.

Whatever the circumstances of plaintiff's tenure with URMC and Roswell, plaintiff's reputation was such that he was subsequently appointed to and remains in

the positions of, *inter alia*, Clinical Assistant Professor of Otolaryngology at UB Medical School; Director of the Comprehensive Head and Neck Center and Attending Surgeon at Sisters of Charity Hospital and Gates Vascular Institute; and Chairman of the Cancer Committee and attending Surgeon at Erie County Medical Center ("ECMC"). Dkt. #107, p.103. Moreover, defendants acknowledge that Dr. Levy was aware of "various issues" plaintiff had at URMC and Roswell when he appointed plaintiff as a Clinical Assistant Professor of Neurology at UB Medical School. Dkt. #110. ¶ 113. Thus, there is no basis to believe that plaintiff's reputation or performance at either of those institutions would be relevant to assessing damages caused by Dr. Levy should it be determined that Dr. Levy's decision to terminate plaintiff from the position of Clinical Assistant Professor of Neurosurgery at UB Medical School and/or exertion of pressure upon other physicians to cease patient referrals to plaintiff was based upon discriminatory and retaliatory reasons. *See Ireh*, 2008 WL 4283344, at *5 (determining that subpoenaed documents from two prior medical residencies were not relevant to assess damages or mitigation of damages because even if plaintiff's performance at two other residency programs was poor, defendants could be held solely liable for consequences of plaintiff's inability to obtain board certification if they were found to have refused to extend third residency contract for unlawful reasons). Rather, plaintiff's professional reputation, and it's impact upon plaintiff's claim to damages, would be assessed based upon opinions held by plaintiff's contemporaries at the time of Dr. Levy's discriminatory and/or retaliatory conduct. Accordingly, plaintiff's motion to quash the subpoenas is granted.

### Plaintiff's Motion for a Protective Order

Dr. Levy and UBNS served plaintiff with a second set of interrogatories on September 5, 2019. Dkt. #102-2.

Plaintiff seeks a protective order with respect to interrogatories No. 1-18. Dkt. #102-3, pp.24-25 & Dkt. #111, p.14. Plaintiff also seeks to enjoin any defendants

from seeking discovery concerning plaintiff's affiliations with URMC and Roswell. Dkt. #102, p.2.

Dr. Levy and the UBNS argue that plaintiff has not demonstrated good cause for a protective order. Dkt. #110-29, pp.7-8.

Pursuant to Rule 26(c)(1)(D) of the Federal Rules of Civil Procedure, the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including, *inter alia*, forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. "Protection against unnecessary discovery is discretionary with the trial court and the court's rulings will be reversed only on a clear showing of abuse of discretion." *Robertson v. National Basketball Ass'n*. 622 F.2d 34, 35-36 (2d Cir. 1980).

Interrogatory Nos. 1 & 2

These interrogatories ask plaintiff to identify how and where he obtained the medical records of the patient involved in the surgical procedure on July 22, 2014. Dkt. #102-2, p.163.

Plaintiff argues that absent a claim that the records are not authentic, the only purpose for these interrogatories is to harass plaintiff by suggesting that he obtained the records improperly. Dkt. #102-3, pp.25-26.

The Court agrees that the circumstances by which plaintiff came to possess medical records of a surgery he performed is collateral to any relevant issue in this litigation. Accordingly, plaintiff's motion for a protective order is granted with respect to these interrogatories.

<u>Interrogatory Nos. 3-18</u>

These interrogatories seek information regarding plaintiff's tenure at and separation from URMC and Roswell, including any complaints made against plaintiff during such tenure and any sanctions or remedial actions taken against plaintiff in response to any such complaints. Dkt. #102-2, pp.164-65.

For the reasons set forth with respect to plaintiff's motion to quash the subpoenas, the Court grants plaintiff's motion for a protective order with respect to these interrogatories.

**Plaintiff's Motion to Compel**

Plaintiff served his first set of interrogatories on Dr. Levy and UBNS on January 14, 2019. Dkt. #102-1, ¶ 23. Plaintiff served his first request or production of documents on defendant Levy and UBNS on January 16, 2019. Dkt. #102-1, ¶ 24. Plaintiff also served a second set of interrogatories on defendant Levy on January 16, 2019. Dkt. #102-1, ¶ 25. At the time of the filing of this motion, defendant Levy had yet to respond to plaintiff's second set of interrogatories. Dkt. #102-1, ¶¶ 27 & 35. Moreover, defendant Levy and defendant UBNS had yet to resolve a number of deficiencies plaintiff had identified in their discovery responses. Dkt. #102-1, ¶¶ 28-34.

Dr. Levy and UBNS declare that they have supplemented their response to plaintiff's first set of interrogatories and document demands and provided full responses to plaintiff's second set of interrogatories and document demands. Dkt. #110, ¶ ¶ 94-96.

Plaintiff replies that defendants have not addressed the issues raised in his motion to compel. Dkt. #111, pp.17-18.

Privilege Log

By letter dated June 4, 2019, plaintiff noted that although Dr. Levy objected on the grounds of attorney-client privilege and attorney work product in response to various discovery demands, he did not provide a privilege log for any information withheld on this basis. Dkt. #102-2, p.122.

By letter dated August 29, 2019, Dr. Levy and UBNS responded that a privilege log was not required for direct communication and/or collaboration between counsel and his client; communication among UBNS directors and/or employees regarding this litigation and including counsel are privileged and not subject to inclusion on a privilege log; any email or direct communication between counsel and his clients is privileged and any request for further information is patently improper; and notes created by counsel or in the presence of counsel in the course of an internal investigation are absolutely privileged. Dkt. #102-2, pp.151-153.

Plaintiff argues that defendants should be required to provide a privilege log for any documents or communications withheld on the basis of attorney-client and/or work product privilege. Dkt. #102-3, p.20.

*Interrogatory No. 11*

"It is well settled that the attorney-client privilege only protects confidential communications between client and counsel that are made for the purpose of obtaining or providing legal advice." *In re application for Supoena to Kroll*, 224 F.R.D. 326, 328 (E.D.N.Y. 2004). The privilege does not extend to the structure and framework of the attorney client relationship or the fact of a meeting between an attorney and his client. *Id.* at 320. Thus, in response to interrogatory No. 11, Dr. Levy and UBNS shall disclose the identity of any individual who assisted in providing responses to plaintiff's interrogatories. *See, e.g., McCulloch v. Hartford Life & Acc. Ins. Co.*, 223 F.R.D. 26, 30 (D.Ct. 2004) (identity of law firm not privileged).

*Document Demand No. 9*

Document demand No. 9 seeks all statements, reports, and any other communications between Dr. Levy and any other person concerning the events of July 22, 2014. Dkt. #102-2, p.102. Dr. Levy responded that these document demands called for documents protected by attorney-client privilege. Dkt. #102-2, pp.102-103.

By letter dated August 29, 2019, Dr. Levy responded that any documents created by counsel relating to this litigation and/or as the direct recipient from Dr. Levy are not subject to inclusion in a privilege log and that no other documents responsive to this demand were in Dr. Levy's possession. Dkt. #110-20, p.2.

Rule 26(a)(5)(A) of the Federal Rules of Civil Procedure provides that when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make that claim; and (ii) describe the nature of the documents communications, or tangible things not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. The Local Rules of Civil Procedure specifically requires, *inter alia*, that the party asserting privilege reveal: (a) the type of document; (b) general subject matter of the document; (c) date of the document; (d) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addresses of the document, and any other recipients shown in the document and, where not apparent, the relationship of the author, addressees, and recipients to each other. Accordingly, Dr. Levy shall produce a privilege log in compliance with the Federal and Local Rules of Civil Procedure for any documents in his possession being withheld on the grounds of privilege within 30 days of this Decision and Order.

Interrogatory No. 5

This interrogatory asks UBNS to describe its affiliation, past or present, with, *inter alia*, SUNY Buffalo. Dkt. #102-2, p.63. UBNS responded: none. Dkt. #110-16, p.49.

By letter dated June 4, 2019, plaintiff noted that Kaleida had produced documentary evidence demonstrating an agreement between UBNS and SUNY Buffalo and requested, therefore, that UBNS supplement its response. Dkt. #102-2, p.125.

By letter dated August 20, 2019, UBNS stated that its response was proper. Dkt. #102-2, p.151.

Plaintiff argues that UBNS should be required to provide a complete and accurate response to this interrogatory. Dkt. #102-3, p.22.

Dr. Levy and UBNS declare that they have fully and properly complied with plaintiff's interrogatories. Dkt. #110, p.21.

UBNS shall supplement its response to this interrogatory with an explanation of its relationship to SUNY Buffalo.

Document Request No. 11

This document demand seeks all documents related to the July 22, 2014 surgery, including billing records, communications with the patient, and/or the patient's family, and/or the surgical team. Dkt. #102-2, p.74.

Dr. Levy objected to the document demand as seeking information protected by HIPAA and provided a redacted text message exchange between the

parent of the patient and Dr. Levy's nurse practitioner, Laura Mason. Dkt. #102-2, p.104 & 131-133.

By letter dated June 4, 2019, plaintiff responded that although redaction of the patient and parent's name may be appropriate, withholding portions of the content of the messages was not. Dkt. #102-2, p.124.

By letter dated August 29, 2019, Dr. Levy responds that the text messages supplied represent the full conversation that transpired. Dkt. #102-2, p.151.

Plaintiff argues that it is obvious from the texts produced by defendant Levy that this response is incomplete. Dkt. #102-3, pp.21-22.

Upon review of the text messages produced, it appears that this disclosure is incomplete. For example, the bottom of Dkt. #102-2, p.131, states "I understand your" without another page completing the sentence. Furthermore, Dkt. #102-2, p.132 asks a question, but there is no response. Accordingly, Dr. Levy and UBNS shall review this disclosure and either supplement any missing dialogue within this exchange or certify that the disclosure is complete.

Document Request No.15

This document demand seeks all documents reflecting any referrals made by UBNS or its affiliates to plaintiff and/or Delaware Medical Group from January 1, 2012 through the present. Dkt. #102-2, p.83.

UBNS provided the names of each surgeon known to have performed surgeries with plaintiff, indicating that the information requested could be obtained through the physicians at deposition. Dkt. #110-16, pp.34-35.

By letter dated June 4, 2019, plaintiff responded that it was not appropriate for UBNS to place the burden upon plaintiff to seek this documentation from the list of surgeons. Dkt. #102-2, p.129. With respect to UBNS's HIPAA objection, plaintiff requested that UBNS supplement its response with redaction of confidential information as appropriate. Dkt. #102-2, p.129.

By letter dated August 29, 2019, UBNS stated that it's response was proper as it had provided a redacted list of cases performed by Dr. Popat and UBNS surgeons. Dkt. #102-2, p.152.

Plaintiff argues that UBNS should be required to produce records reflecting referrals to Dr. Popat and Delaware Medical Group, with appropriate redactions. Dkt. #102-3, p.23.

As the relevant information for purposes of assessing plaintiff's allegation of a cessation of surgical referrals would be included in a list of patients referred by UBNS surgeons, the Court sees no need for disclosure of any patient's medical records. However, the Court questions whether disclosure of a list of all surgeons known to have performed surgeries with plaintiff includes disclosure of all referrals made by such surgeons. Accordingly, UBNS shall supplement its response or certify that it has provided a list of all patients referred by UBNS physicians to plaintiff.

General Deficiencies

Plaintiff argues that documents produced by other defendants which involved UBNS but were not disclosed by UBNS raise concern that UBNS may have inadvertently withheld relevant documents from plaintiff. Dkt. #102-3, pp.23-24.

By letter dated August 29, 2019, UBNS responded that it had "made all appropriate attempts to locate documents and has provided any and all documents not subject to attorney privilege." Dkt. #102-2, p.153.

Plaintiff asks the Court to direct UBNS to conduct a thorough search of its records to confirm that relevant documents have not been inadvertently withheld. Dkt. #102-3, p.24.

In reliance upon UBNS' representation, the Court denies this aspect of plaintiff's motion to compel.

### Dr. Levy & UBNS's Motion to Compel

Notwithstanding the fact that Dr. Levy and UBNS did not file a Notice of Motion, they argue that plaintiff's responses are conclusory and that plaintiff should be compelled to respond to certain document demands and interrogatories. Dkt. #110-29, pp.13-14.

Document Demand No. 19

This document demand seeks any communications between plaintiff and any unnamed third party regarding the events alleged in the second amended complaint. Dkt. #110-22, p.13.

Plaintiff objected to the document demand as overly broad, vague, unduly burdensome and seeking irrelevant information. Dkt. #110-22, p.13.

By letter dated August 29, 2019, Dr. Levy and UBNS requested that plaintiff identify any other communications with individuals not previously identified. Dkt. #102-2, p.153.

Plaintiff reiterates that this request is over broad and argues that he has responded to this demand by providing copies of his complaints as well as a letter sent to Dr. David Hughes, Chief Medical Officer at Kaleida Health. Dkt. #111, pp.19-20. With respect to Dr. Levy's allegation of slander, plaintiff responds that any statements made to the individuals identified by plaintiff were, by nature, oral rather than written. Dkt. #111, p.19. In reliance upon plaintiff's representation that relevant documents have been produced, this aspect of Dr. Levy and UBNS's motion to compel is denied.

Document Demand Nos. 25-27

These document demands seek any documents concerning plaintiff's relationship with ECMC, Sister's of Charity Hospital, and Catholic Health. Dkt. #110-22, pp.16-19.

Plaintiff responded that the request is over broad, unduly burdensome, vague and seeks information outside of the relevant time frame and unrelated to the allegations in plaintiff's complaint. Dkt. #110-22, pp.16-19.

Dr. Levy and UBNS argue that despite claiming that he has been blacklisted from surgeries with UBNS surgeons at the direction of Dr. Levy, plaintiff has continued to operate with doctors at both ECMC and Sister's Hospital and has discussed participating in surgeries with another UBNS physician who operates at both the Gates Vascular Institute and Catholic Health facilities. Dkt. #110, ¶¶ 121-122.

Plaintiff responds that this information is not relevant and that it is privileged. Dkt. #111, p.20. More specifically, plaintiff responds that he has not claimed that he was blacklisted from these institutions or that he no longer works at academic hospitals or with medical students, but that referrals from UBNS physicians have been greatly reduced. Dkt. #111, p.21. Plaintiff asserts that the fact that he provides services

-19-

at some of the same facilities as UBNS physicians and on occasion, alongside those physicians, does not make his separate relationships with these third-party entities relevant. Dkt. #111, p.22.

The Court agrees that this demand is over broad and vague. Defendants may obtain information relevant to plaintiff's allegations of damages caused by reduced referrals through more direct discovery demands.

Document Demand Nos. 28-31

These document demands seek each and every document concerning plaintiff's relationship, including employment and separation, with Roswell and URMC. Dkt. #110-22, pp.19-21.

For the reasons set forth with respect to plaintiff's motion to quash the subpoenas, the Court denies this aspect of Dr. Levy and UBNS's motion to compel.

Document Demand Nos. 32 & 34-38

These document demands seek each and every document concerning the purported relationship between UBNS and Delaware Medical; Delaware Medical Group and Kaleida; Delaware Medical Group and ECMC; Delaware Medical Group and Sister's Hospital; Delaware Medical Group and Catholic Health; and Delaware Medical Group and Roswell. Dkt. #110-22, pp.21-24.

Plaintiff responded that the requests were over broad, unduly burdensome and vague. Dkt. #110-22, pp.21-24. Plaintiff also objected that the demands sought information from Delaware Medical Group, an entity that is not a party to this action. Dkt. #110-22, pp.21-24.

By letter dated August 29, 2019, Dr. Levy and UBNS argues that "Dr. Popat, as a partner of Delaware Medical Group, makes claims in his Second Amended Complaint as well as his EEOC complaint that both he and his partners at Delaware Medical Group have been damaged as a result of receiving fewer referrals following the events at issue in this litigation." Dkt. #102-2, p.153.

Plaintiff argues that Delaware Medical Group's relationship with UBNS, other defendants and nonparty entities such as ECMC, Catholic Health and Roswell is irrelevant to his claim, seeks information that he does not possess and is unlikely to provide any information relevant to plaintiff's damages. Dkt. #111, p.24. Plaintiff clarifies that his claim to have been damaged by the cessation of referrals to himself and/or Delaware Medical Group, P.C., was not intended to include lost revenue of Delaware Medical Group as damages to plaintiff, but only to encompass loss of referrals to him through Delaware Medical Group. Dkt. #111, p.25.

In reliance upon plaintiff's representation that he is not seeking damages on behalf of Delaware Medical Group, which is not a party to this action, the Court finds that documents regarding relationships between Delaware Medical Group and other entities are not relevant. Defendants may obtain information relevant to plaintiff's allegations of damages caused by reduced referrals through more direct discovery demands. As a result, this aspect of Dr. Levy and UBNS's motion to compel is denied.

Document Demand No. 33

This document demand seeks each and every document concerning the purported relationship between plaintiff and UBNS. Dkt. #110-22, p.22.

Subject to objections, plaintiff disclosed 133 pages of documents and indicated that he would supplement his response as appropriate. Dkt. #110-22, p.22.  In

reliance upon this representation, this aspect of Dr. Levy and UBNS's motion to compel is denied as moot.

Document Demand Nos. 47-48

These demands seek each and every document concerning plaintiff's relationship and conditions of plaintiff's employment with Delaware Medical Group, including employment contracts from 2010 through the present. Dkt. #110-22, pp.28-29.

Plaintiff responded that the request was over broad, unduly burdensome, vague, seeks information outside the relevant time frame and seeks irrelevant information. Dkt. #110-22, pp.29-30. Plaintiff also objects that these requests seek information protected by confidentiality provisions and agreements with third parties. Dkt. #110-22, pp.29-30.

By letter dated August 29, 2019, Dr. Levy and UBNS argue that "Dr. Popat, as a partner of Delaware Medical Group, makes claims in his Second Amended Complaint as well as his EEOC complaint that both he and his partners at Delaware Medical Group have been damaged as a result of receiving fewer referrals following the events at issue in this litigation." Dkt. #102-2, p.153.

Plaintiff responds that he has produced his employment contract with Delaware Medical Group as well as any amendments and compensation information. Dkt. #111, pp.25-26. In reliance upon this representation, this aspect of Dr. Levy and UBNS's motion to compel is denied as moot.

Document Demand No. 49

This demand seeks each and every document concerning plaintiff's position with Univera Health. Dkt. #110-22, p.30.

Plaintiff objects to this demand on the grounds that it is over broad, unduly burdensome, vague and seeks irrelevant information. Dkt. #110-22, p.30.

Dr. Levy and UBNS believe that plaintiff earns a salary for acting in an administrative capacity with Univera Health and argue that they are entitled to evaluate all lines of income for a full and complete evaluation of claimed losses and/or mitigation of losses by plaintiff. Dkt. #110, ¶ 116.. Dkt. #110, ¶ 116.

Plaintiff responds that he has provided income information, including income tax returns, 1099s and other compensation documents relevant to mitigation of documents from 2010 through 2018 and that any further interpretation of this request is over broad and seeks documentation that is irrelevant . Dkt. #111, pp.26-27.

The Court agrees that this demand is over broad and denies this aspect of the motion to compel in reliance upon plaintiff's representation that he has disclosed documents setting forth all sources of income.

Document Demand No. 56

This document demand seeks every document concerning UBNS or any other named or unnamed party permitting Dr. Levy to engage in discrimination against women and people of color, as alleged in the second amended complaint. Dkt. #110-22, p.34.

Plaintiff responded that this request was over broad, unduly burdensome and vague, but produced 134 pages of documents. Dkt. #110-22, pp.34-35.

By letter dated August 29, 2019, Dr. Levy and UBNS argue that the documents identified by plaintiff are not responsive. Dkt. #102-2, p.154.

Plaintiff argues that he has produced all documentation in his possession responsive to this demand. Dkt. #111, p.27. In reliance upon this representation, this aspect of Dr. Levy and UBNS's motion to compel is denied as moot.

Interrogatory No. 16

This interrogatory asks plaintiff to describe each instance of discrimination against women and people of color engaged in by Dr. Levy, including date, time, place, and individuals present. Dkt. #110-22, p.48.

Subject to objections, plaintiff referred defendants to his second amended complaint and EEOC charge and also stated that

> Dr. Levy also promoted the racist "BUNS" name throughout the defendant organizations for several years preceding the basis of this instant action. And female doctors working with Dr. Levy complained of sexist remarks and sexually harassing comments/behavior by Dr. Levy for approximately two or three years preceding the basis of this instant action. Plaintiff further states that individuals present for these unlawful acts by Dr. Levy included all persons present during the operation at issue in this matter as well as those present at the meeting at Dr. Sidduiqui's home following the operation, and the individual female doctors previously and currently employed by UBNS, and those identified throughout the parties' initial disclosures.

Dkt. #110-22, p.48.

By letter dated August 29, 2019, Dr. Levy and UBNS argue that plaintiff's response fails to identify anyone other than Dr. Leonardo and fails to specify what Dr. Leondardo said to support plaintiff's claim. Dkt. #102-2, p.154. Dr. Levy and UBNS argue that plaintiff has simply regurgitated the allegations of his complaint without sufficient specifics to allow them to defend against plaintiff's allegations. Dkt. #110-29, p.14.

Plaintiff responds that he intends to supplement his response to identify Dr. Leonardo and otherwise has provided the best direct information that he has to date on this topic and. Dkt. #111, p.28.  In reliance upon this representation, this aspect of Dr. Levy and UBNS's motion to compel is denied as moot.

### SUNY Buffalo and UB Medical School's Motion to Compel

Document Demand Nos.13-15

These document demands seek each and every document concerning the plaintiff's relationship with ECMC, Sister's Hospital and Catholic Health, respectively. Dkt. #108-1, p.24.

Plaintiff responded, subject to objections, that it would produce any non-privileged responsive documents. Dkt. #108-1, pp.40-42. Subsequently, plaintiff advised that he had not produced his employment contract with ECMC due to the confidentiality provisions of that document and was not producing other documents regarding his affiliation with ECMC, Sister's Hospital or Catholic Health on the grounds that such documents are irrelevant. Dkt. #108-1, p.97.

SUNY Buffalo and UB Medical School argue that because the second amended complaint alleges that they have interfered with plaintiff's contractual agreement with Delaware Medical Group, which requires Delaware Medical Group to authorize plaintiff's medical services to third parties such as ECMC, Sister's Hospital and Catholic Health, his contractual arrangements with these entities are in controversy. Dkt. #108-1, ¶ 32.

Plaintiff argues that any claims related to such contract have already been dismissed against the state defendants. Dkt. #112-2, p.16.

SUNY Buffalo and UB Medical School replies that these documents are also relevant to plaintiff's broad claim of substantial damages to reputation and loss of income from patient referrals. Dkt. #113, pp.3-4.

Plaintiff responds that defendants have already received documentation of his compensation from the period of 2010 through at least 2017 in the form of his tax returns, 1099s, and other documents. Dkt. #112-1, p.2. Moreover, plaintiff argues that there is no basis to believe that plaintiff is not in compliance with the requirements set forth in his contract with Delaware Medical Group regarding his relationship with his entities so as to impact his damages. Dkt. #112-2, p.9.

By Decision and Order entered September 17, 2018, the Court dismissed plaintiff's common law claims against SUNY Buffalo and UB Medical School. Dkt. #85, pp.44-45. As a result, documents relating to plaintiff's contractual relationship with ECMC, Sister's Hospital and Catholic Health are not relevant to plaintiff's causes of action against these defendants. In addition, defendants have not demonstrated that these documents are relevant to establishing alternative causes for plaintiff's allegations of lost income. Defendants may obtain information relevant to plaintiff's allegations of damages caused by reduced referrals through more direct discovery demands. Accordingly, this aspect of SUNY Buffalo and UB Medical School's motion to compel is denied.

Document Demand No. 34

Document Demand #34 seeks each and every document concerning the existence of a contract between plaintiff and UB Medical School, UBNS and Kaleida Health as alleged in plaintiff's second amended complaint. Dkt. #108-1, p.26.

Plaintiff objected to the demand as overly broad, unduly burdensome and vague. Plaintiff also objected that the demand sought documents equally accessible to defendants. Dkt. #108-1, pp.51-52.

SUNY Buffalo and UB Medical School argue that they are seeking documents relevant to plaintiff's fourth cause of action pursuant to 42 U.S.C. § 1981 which alleges that the employment relationship between and among plaintiff, SUNY Buffalo, UBNS and Kaleida constitutes a contract under section 1981 (Dkt. #60, ¶ 78), and plaintiff's sixth cause of action for tortious interference with contract, employment and prospective economic advantage which alleges that plaintiff had valid contracts and agreements with UBNS, SUNY Buffalo and other employees of UBNS, SUNY Buffalo and Kaleida for developing the specialty practice group and another sub-sub specialty practice (Dkt. #60, ¶ 95), and that UBNS, Dr. Levy and SUNY Buffalo knew of these valid contracts and agreements (Dkt. #60, ¶ 98). Dkt. #107, ¶ 22 & Dkt. #108-1, p.72.

Plaintiff argues that these paragraphs reference causes of action which have been dismissed against the moving defendants. Dkt. #112-2, p.16. In any event, plaintiff explains that there is no single, written agreement that can be produced because of the convoluted relationships between UB Medical School and medical corporations. Dkt. #112-2, pp.17-18.

By Decision and Order entered September 17, 2018, the Court dismissed plaintiff's cause of action pursuant to 42 U.S.C. § 1981 against SUNY Buffalo and UB Medical School. Dkt. #85, pp.46. As a result, documents concerning the existence of a contract between plaintiff and UB Medical School, UB Neurosurgery and Kaleida Health as alleged in plaintiff's second amended complaint are not relevant to plaintiff's causes of action against these defendants. Accordingly, this aspect of SUNY Buffalo and UB Medical School's motion to compel is denied.

Interrogatories

Defendants' motion to compel responses to Interrogatories Nos. 10, 11, 12, 13 and 14 was withdrawn. Dkt. #113, p.2. Accordingly, this aspect of SUNY Buffalo and UB Medical School's motion to compel is moot.

## CONCLUSION

For the reasons set forth above, plaintiff's motion (Dkt. #102), to quash subpoenas and for a protective order is granted; plaintiff's motion (Dkt. #102), to compel is granted in part and denied in part; Dr. Levy and UBNS' issues regarding plaintiff's discovery responses are resolved; and SUNY Buffalo and UB Medical School's (Dkt. #108), motion to compel discovery is denied.

**SO ORDERED.**

DATED:        Buffalo, New York
                    November 3, 2020

                                             *s/ H. Kenneth Schroeder, Jr.*
                                             **H. KENNETH SCHROEDER, JR.**
                                             **United States Magistrate Judge**