August 25, 2014

Michael E. Cain, M.D.
University at Buffalo School of Medicine
155 Biomedical Education Building
University at Buffalo
Buffalo, New York 14214-3013

   Re: UBNS/Popat Investigation

Dear Dean Cain:

  I am writing to inform you that we have completed our internal investigation pertaining to the allegations by Dr. Popat of a racially discriminatory event that is alleged to have occurred on July 22, 2014, and have found there to be no merit to said allegation. Our conclusion is based on review of our internal policies and procedures, review of our residency and fellowship program census, and most importantly, based on information obtained through individual interviews of all of the residents and attendings, with the exception of Dr. Popat, who were present in the operating room on July 22, 2014.

  While it is not our intention to detail each and every step taken during our internal investigation, I would like to inform you of a few highlights that were critical to our findings.

  As you are aware, the Neurosurgical residency program, which is hand selected by Drs. Levy, Siddiqi, and Leonardo, is remarkably diverse. To date, UBNS has never received a complaint or allegation of discriminatory comments or behavior by any of our attendings. With reference to Dr. Popat's complaint, no attending or resident was made aware of Dr. Popat's allegation until receiving Dr. Popat's letter dated July 31, 2014.

  Of greatest weight was the information we learned through interviews of Drs. Atwal (PGY 6), Natarajan (PGY 4), Siddiqi and Levy. All interviews were conducted individually and confidentially to promote candor. The recall of each individual regarding the events of July 22, 2014 was consistently opposed to the allegation set forth in Dr. Popat's letter. Moreover, each of the residents expressed significant dismay at the mere allegation that Dr. Levy was being accused of discriminatory behavior. The overwhelming message from the residents was that they have never felt as though they have been treated differently, singled out, or in any way treated disrespectfully by Dr. Levy or any other attending in the program. Conversely, they have felt overwhelming support and comradery from Dr. Levy and the program.

  We have also reviewed the actions taken by Dr. Levy in terminating Dr. Popat's appointment to the Neurosurgical service, an appointment which Dr. Levy himself made as Chairman several months ago. Based on our interviews, we were informed of several very troubling actions by Dr. Popat before and during the surgical case at issue that posed risk to the

patient and called into question Dr. Popat's judgment. Following the case, a request was made for Dr. Popat to contact Dr. Levy to discuss his actions. Dr. Popat never complied with the request. Dr. Levy then made the determination, which is well within his discretion as Chairman, to terminate Dr. Popat's adjunct position on the Neurosurgical service. It was not until after Dr. Levy sent the letter to Dr. Popat advising of his termination that Dr. Popat raised the complaint regarding allegedly discriminatory comments. We therefore have concluded that Dr. Levy's actions in terminating Dr. Popat's adjunct position were proper.

I trust the foregoing satisfies the University's request at this time. We will make every effort to comply with any additional investigation that the University may deem necessary. Should you have any questions, please do not hesitate to contact me. I remain,


Very Truly Yours,


Kimberly Drozdowski
Director of Human Resources
University at Buffalo Neurosurgery