UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

SAURIN POPAT, M.D.

                          *Plaintiff*,

v.                                   Civil Action No.:

                                      15-CV-1052-EAW-HKS

ELAD LEVY, M.D., THE STATE UNIVERSITY OF
NEW YORK AT BUFFALO, UNIVERSITY AT
BUFFALO SCHOOL OF MEDICINE AND
BIOSCIENCE, UNIVERSITY AT BUFFALO
NEUROSURGERY GROUP, UNIVERSITY AT
BUFFALO NEUROSURGERY, INC., AND
KALEIDA HEALTH,

                          *Defendants*.

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL AGAINST DEFENDANTS ELAD LEVY, M.D. AND
UNIVERSITY AT BUFFALO NEUROSURGERY, INC.**

 

**THE GLENNON LAW FIRM, P.C.**
Peter J. Glennon, Esq.
Nicholas C. Roberts, Esq.
Laura K. Figueras, Esq.
*Attorneys for Plaintiff*
160 Linden Oaks
Rochester, New York 14625
Tel: 585-210-2150
PGlenonn@GlennonLawFirm.com
NRoberts@GlennonLawFirm.com
LFigueras@GlennonLawFirm.com

**PRELIMINARY STATEMENT**

Plaintiff Saurin Popat, M.D. ("Dr. Popat" or "Plaintiff") submits this Reply Memorandum of Law in further support of his motion to compel the production of documents and communications identified as privileged by Defendants University at Buffalo Neurosurgery, Inc. ("UBNS") and Elad Levy, M.D. ("Levy") (collectively, "Defendants") on the grounds that these documents and communications are not privileged, and/or that Defendants waived any applicable privilege by putting the documents at issue via their Sixth, Seventh, Eighth, Ninth, and Fourteenth Defenses, including the *Faragher/Ellerth* defense.

Defendants' papers opposing the instant motion completely fail to refute the cases cited by Plaintiff holding that a defendant waives attorney-client privilege that would otherwise apply to documents and communications related to an internal investigation of a discrimination complaint when the defendant asserts affirmative defenses relying on the findings of the investigation. Instead, Defendants argue that they never conducted an internal investigation, never relied on the findings of that investigation, and/or never asserted affirmative defenses that put the investigative documents at issue. Plaintiff's motion should be granted because these statements are obviously and demonstrably false.

**POINT I**

**UBNS CONDUCTED AN INTERNAL INVESTIGATION OF PLAINTIFF'S DISCRIMINATION COMPLAINT AND RELIED UPON THE FINDINGS OF THAT INVESTIGATION.**

Defendants' memorandum of law contains a bizarre claim that the only investigation "at issue was conducted by a co-defendant (SUNY). Plaintiff is thus asking this Court to abolish Defendants' right-to-counsel because the co-defendant performed an investigation." (Defendants' Memorandum of Law in Opposition filed March 22, 2021 (Dkt. 130), at 6.) First, Plaintiff does

not seek to abolish anyone's right of counsel. Rather, Plaintiff is seeking discovery of documents related to a specific subject—Defendants' internal investigation—for which the attorney-client privilege has been waived.

Second, UBNS did conduct an internal investigation. Mary Ann Kedron, the CEO of UBNS, sent a letter dated August 25, 2014 to Dr. Michael Cain, Dean of the University at Buffalo School of Medicine and Biomedical Sciences, stating that "we have completed our internal investigation pertaining to the allegations by Dr. Popat of a racially discriminatory event that is alleged to have occurred on July 22, 2014, and have found there to be no merit to said allegation" (Roberts Reply Declaration dated April 9, 2021, Exhibit A).[1] The letter states that the investigation included interviews with Drs. Atwal, Natarajan, Siddiqui, and Levy, all of whom were present during the surgery at issue on July 22, 2014. Dr. Popat, however, was not interviewed. Ms. Kedron explains that UBNS determined that Levy terminated Dr. Popat's appointment to the Department of Neurosurgery for nondiscriminatory reasons, including that Dr. Popat had exercised questionable judgment before and during the surgery at issue, and that Dr. Popat failed to comply with a request to contact Dr. Levy to discuss the matter. Therefore, the letter concludes, there was "no reason to believe his actions were done for any reason other than those surrounding the actions of Dr. Popat." (*See generally id.*)

As discussed below, several of Defendants' Affirmative Defenses are based on the premise that Defendants acted in good faith and had legitimate, nondiscriminatory reasons for the

---

[1] Oddly, copies of this letter were produced by the SUNY and Kaleida codefendants, but *not* by UBNS or Levy, despite being plainly responsive and not privileged. Levy did produce a very similar letter addressed to Dr. Cain from Kimberly Drozdowski, UBNS's Director of Human Resources. But this letter was not signed, is not on UBNS letterhead, and appears to be an earlier draft of the letter that Ms. Kedron ultimately mailed to Dr. Cain. *See* Roberts Reply Decl., Exhibit B.

termination of Dr. Popat's neurosurgery appointment, and Defendants have therefore placed the internal investigation that led to this conclusion squarely at issue.

## POINT II

**DEFENDANTS WAIVED ATTORNEY-CLIENT PRIVILEGE BY ASSERTING AFFIRMATIVE DEFENSES PLACING THE INTERNAL INVESTIGATION AND ITS FINDINGS AT ISSUE, INCLUDING BUT NOT LIMITED TO THE *FARAGHER/ELLERTH* DEFENSE.**

Defendants contend they "did not place the findings of an investigation or the advice of counsel at issue in this action," and that "Plaintiff's arguments to the contrary ignore Defendants' Amended Answer to the Second Amended Complaint as well as Defendants' Response to Plaintiff's First Set of Interrogatories." (Declaration in Opposition of Colleen K. Mattrey dated March 19, 2021 (Dkt. 129), ¶¶ 19-20). The assertion that Plaintiff "ignored" the contents of Defendants' Amended Answer to the Second Amended Complaint is difficult to comprehend, considering Plaintiff's original motion papers quoted directly from several of Defendants' affirmative defenses and explained why they result in a waiver of the attorney-client privilege with respect to the internal investigation (*see* Plaintiff's Memorandum of Law dated February 5, 2021 (Dkt. 125-11), at 12-14).

Defendants make yet another erroneous claim when stating that "Plaintiff demanded that Defendants particularize their affirmative defenses in Interrogatories. Defendants advised that their affirmative defense to this action is that Plaintiff was terminated due to his conduct during and following a medical operation." (Dkt. 129, ¶ 21.) Even if this were Defendants' only affirmative defense, this is merely a restatement of the conclusion Mary Ann Kedron reached upon completion of UBNS's internal investigation. Accordingly, Defendants have placed that investigation at issue and they may not conceal the documents that support (or undermine) that investigation's

conclusions. As noted in Plaintiff's original motion papers, a party "may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication." *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993). Here, documents related to UBNS's internal investigation of Plaintiff's complaint will help determine whether Plaintiff was terminated because of his conduct during the surgical operation, or if this reason is merely pretextual.

Moreover, of course, this is not the only affirmative defense UBNS and Levy rely upon. Defendants' counsel implies that Defendants were asked to particularize all of their affirmative defenses in Plaintiff's First Set of Interrogatories, and that the defenses stated in Defendants' interrogatory responses are therefore the only affirmative defenses that Levy and UBNS rely upon in this action. In reality, Defendants were asked to particularize only the Third, Fifth and Tenth Defenses stated in Defendants' Amended Answer to the Second Amended Complaint (Dkt. 94 ¶¶ 112, 114, 119; *see also* Dkt. 129-2, Defendants UBNS's and Levy's Responses to Plaintiff's First Set of Interrogatories). Defendants were not asked to particularize any of the defenses discussed in Plaintiff's original motion papers—the Sixth, Seventh, Eighth, Ninth, and Fourteenth Defenses. Defendants may not simply pretend these defenses do not exist now that the waiver of privilege has been brought to their attention.

Perhaps most importantly, Defendants' Sixth Defense is a nearly verbatim recitation of the *Faragher/Ellerth* defense. By raising this defense, UBNS has put the reasonableness of its internal investigation at issue and has therefore waived privilege with respect to any document related to the investigation. *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 41 (E.D.N.Y. 2013); *Prince v. Madison Square Garden, L.P.*, 240 F.R.D. 126, 128 (S.D.N.Y. 2007) (holding that defendants must produce all internal investigation materials that may form a part of the

4

*Faragher/Ellerth* defense). In *Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 461 (S.D.N.Y. 2019), the court found that the defendants had raised the *Faragher/Ellerth* defense and thereby waived privilege when they asserted "that they undertook good faith efforts to prevent and remedy any alleged discrimination or retaliation pursuant to their internal procedures and plaintiffs failed to fully avail themselves of available avenues." Compare Defendants' Sixth Defense in the instant case:

**SIXTH DEFENSE**
To the extent that Plaintiff seeks to assert a harassment claim, any such claim is barred because Dr. Levy and UBNS exercised reasonable care to prevent and promptly correct any harassing behavior, Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided, Plaintiff unreasonably failed to avoid the alleged harm, and/or Dr. Levy and UBNS did not participate in, authorize, condone, or ratify the alleged harassment. (Dkt. 94, ¶ 115.)

Plaintiff respectfully submits that the Court should grant Plaintiff's motion based on the assertion of the *Faragher/Ellerth* defense alone. As the Court stated in *Koumoulis*, "Plaintiffs have a substantial need to see the record as it was developed to be able to test whether the grounds given by Defendants as the basis for their actions were in fact actually reported to them; whether Defendants deliberately developed an incomplete record or did a thorough investigation; and whether the conclusions of the investigation are substantiated by an accurate record." 295 F.R.D. at 47-48.

Moreover, the Seventh Defense asserts that Defendants acted in good faith and without discriminatory intent and had reasonable grounds to believe that their actions were supported by legitimate, non-discriminatory reasons (as Ms. Kedron concluded in her investigation report). Accordingly, Plaintiff has a right to discover any documents that form the basis for such conclusions. Likewise, the Eighth Defense asserts that Defendants would have taken the same

5

actions in the absence of any impermissible considerations; the Ninth Defense asserts that any discriminatory or retaliatory actions were taken without Defendants' authorization, or that they were taken in good faith, were not willful, and were without malice or reckless indifference to Plaintiff's rights; and the Fourteenth Defense asserts that any actions based on impermissible factors were not condoned or authorized by Defendants. Plaintiff must be permitted to discover all documents that have a bearing on these defenses, including most obviously notes and other documents created in the course of UBNS's internal investigation.

Notably, the documents that Plaintiff is entitled to receive may include more than just those documents listed on Defendants' amended privilege log (Dkt. 125-5). Defendants made broad, sweeping assertions of attorney-client privilege in response to, among other demands, Request No. 7 in Plaintiff's First Requests for Production of Documents to UBNS (*see* Roberts Reply Decl., Exhibit C). Moreover, Kimberly Drozdowski stated in opposition to the instant motion that Defendants have already produced copies of UBNS's internal policies and procedures for reviewing claims of discrimination and harassment which were in effect as of August 2014 (Dkt. 129-1, Kimberly Drozdowski Affidavit, sworn to on March 19, 2021, ¶ 7). Plaintiff has never received these documents (Roberts Reply Decl. ¶ 6). Accordingly, it appears that Defendants may be required to produce more documents than just the few that are listed on the amended privilege log.

Of course, this is not to say that Defendants must produce every document included on the privilege log. As Plaintiff acknowledged in his original motion papers, the privilege waiver does not apply to investigations related to EEOC charges or future litigation. *See Asberry v. Corinthian Media, Inc.*, No. 09 CIV. 1013 CM/DFE, 2009 WL 3073360, at *1 (S.D.N.Y. Sept. 18, 2009) (holding that where employer asserted advice of outside counsel as legitimate reason for plaintiff's

6

termination, plaintiff was entitled to attorney-client communications that extended shortly beyond her termination, but was denied discovery of communications regarding EEOC charges). Contrary to Defendants' blithe assertion that "[f]uture litigation was obvious to all individuals involved" when Plaintiff filed his administrative complaint (Dkt. 130 at 4), Plaintiff's complaint does not threaten litigation or even mention such a possibility (*see* Dkt. 125-9). Furthermore, Plaintiff did not file an EEOC charge until May of 2015, and this action was not commenced until December 2015 (Roberts Reply Decl. ¶ 7). Thus, it may be necessary for the Court to conduct an *in camera* review of the documents at issue to determine which documents must be produced because they relate to the initial investigation of Plaintiff's administrative complaint, and which documents are still privileged because they relate to future litigation or the eventual EEOC charge. Likewise, such an *in camera* review would assist the Court in determining which documents are related to the provision of business advice rather than legal advice, as discussed in Plaintiff's original motion papers.

## POINT III

### PLAINTIFF'S MOTION IS NOT PRECLUDED BY THE COURT'S TEXT ORDER HOLDING THAT THE DESCRIPTIONS ON PLAINTIFF'S PRIVILEGE LOG PROVIDED SUFFICIENT DETAIL.

Finally, Defendants contend that Plaintiff's motion is precluded by the Court's Text Order entered December 30, 2020 (Dkt. 121), which held that the descriptions contained in Defendants' privilege log were sufficiently detailed. The Text Order addressed only the discrete question of whether Defendants provided an appropriate level of detail on their privilege log, pursuant to the Federal Rules of Civil Procedure. This motion addresses an entirely separate issue, *i.e.*, that Defendants have waived the attorney-client privilege with respect to at least some of the documents

listed on their privilege log by placing UBNS's internal investigation at issue. Accordingly, the Court's previous Text Order does not preclude Plaintiff from filing the instant motion.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that this Court issue an Order compelling Defendants to produce all documents and communications withheld on Defendants' privilege log and related to UBNS's internal investigation of Plaintiff's discrimination complaint or, at the very least, Plaintiff requests that this Court conduct an *in camera* review of the documents and communications at issue to determine whether they are entitled to be withheld as privileged.

Dated: April 9, 2021

**THE GLENNON LAW FIRM, P.C.**

**By:** */s/ Nicholas C. Roberts*
    Peter J. Glennon
    Nicholas C. Roberts
    Laura K. Figueras
    *Attorneys for Plaintiff*
    160 Linden Oaks
    Rochester, New York 14620
    (585) 210-2150
    PGlennon@GlennonLawFirm.com
    NRoberts@GlennonLawFirm.com
    LFigueras@GlennonLawFirm.com