UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAURIN POPAT, M.D.,

        Plaintiff,

v.                                                                                                          15-CV-1052W(Sr)

ELAD LEVY, MD.,

THE STATE UNIVERSITY OF NEW YORK
AT BUFFALO

UNIVERSITY AT BUFFALO SCHOOL
OF MEDICINE AND BIOSCIENCE,

UNIVERSITY AT BUFFALO
NEUROSURGERY GROUP,

UNIVERSITY AT BUFFALO
NEUROSURGERY, INC.,

and

KALEIDA HEALTH,

        Defendants.

---

## DECISION AND ORDER

This matter was referred to the undersigned by the Hon. Elizabeth A. Wolford, in accordance with 28 U.S.C. § 636(b), for all pretrial matters. Dkt. #17.

By letter dated July 23, 2014, defendant Elad Levy, M.D., in his capacity as Professor and Chair of Neurosurgery at State University of New York at Buffalo School of Medicine and Bioscience ("UB Medical School"),[1] terminated plaintiff's

---

[1] Dr. Levy is also Chair of Neurosurgery at Kaleida Health and Chair of Neurosurgery for University at Buffalo Neurosurgery ("UBNS"), which is part of UBMD, the single largest medical group in Western New York, with more than 500 physicians in 18 medical specialties. Dkt. #60, ¶ 11.

voluntary faculty appointment effective August 29, 2014.[2] Dkt. #108-1, p.144. Dr. Levy states that he terminated plaintiff from this position because of plaintiff's attempt to schedule a collaborative surgery when Dr. Levy would be away; because plaintiff deviated from the agreed upon protocol during that surgery on July 22, 2014; because plaintiff subsequently failed to contact him to discuss the surgery as Dr. Levy requested; and because Dr. Levy had been advised that plaintiff had been aggressive with billing staff when they raised issues regarding plaintiff's medical coding of surgeries performed with various UBNS surgeons. Dkt. #128-2, pp.5-6.

By letter addressed to Dr. Cain, dated July 31, 2014 and postmarked August 13, 2014, plaintiff requested a full formal investigation of racially discriminatory comments he alleges Dr. Levy made during surgery on July 22, 2014. Dkt. ##125-9 & 125-10. Plaintiff also complained of a series of multiple events preceding and subsequent to this incident that clearly demonstrate abusive conduct and conduct detrimental to patient care. Dkt. #125-9, p.1. Plaintiff complained that Dr. Levy had terminated his appointment[3] within the Department of Neurosurgery at UB Medical School without any discussion and sought to appeal that determination. Dkt. #125-9.

By letter dated August 19, 2014, Dr. Cain advised plaintiff that:

The University at Buffalo takes allegations of discrimination very seriously and has a process in place for investigating such matters. Therefore in accordance with the UB Policy

---

[2] Dr. Levy had recommended plaintiff's appointment to the position of Voluntary Clinical Associate Professor in the Department of Neurosurgery at UB Medical School by letter addressed to Michael E. Cain, M.D., Dean of the UB Medical School ("Dr. Cain"), dated December 11, 2013. Dkt. #110-4. Plaintiff remains a Clinical Assistant Professor of Otolaryngology at UB Medical School, a position he was appointed to in 2009. Dkt. #107, p.103.

[3] Plaintiff stated that although he had not been formally notified that he had received this appointment, he was concerned that withdrawal of the appointment might have detrimental professional consequences within the entire SUNY system and other academic, licensing, medical malpractice and clinical privileging entities. Dkt. #125-9, p.2.

> against Discrimination and Harassment, I am referring your letter and this matter to the University's Office of Equity, Diversity and Inclusion for investigation as appropriate. I am also referring your letter to [UBNS] for participation in an investigation of this matter as appropriate. I will ask that a review of the circumstances regarding your University appointment be included in any such investigation.

Dkt. #125-10.

Kimberly Drozdowski, Director of Human Resources at UBNS, avers that plaintiff's complaint was forwarded to Dr. Levy and CEO Mary Ann Kedron by Dr. Cain in mid-August 2014. Dkt. #129-1, ¶ 4. Ms. Drozdowski avers that they were advised by Dr. Cain that the matter had been referred to Sharon Nolan-Weiss, Director of the Office of Equity, Diversity and Inclusion at the State University of New York at Buffalo (SUNY Buffalo"), for a full investigation. Dkt. #129-1, ¶ 5. Ms. Drozdowski was advised that, "due to the nature of the allegations and in anticipation of litigation, Dr. Levy and UBNS had retained Colleen Mattrey as counsel to provide legal advice." Dkt. #129-1, ¶ 6. Ms. Drozdowski affirms that "[t]he limited communication I had with Ms. Mattrey during that time period and up to the present has been strictly for the purpose of obtaining her legal advice." Dkt. #129-1, ¶ 8.

By letter dated August 25, 2014,[4] Ms. Kedron advised Dr. Cain that UBNS had completed its internal investigation, which included individual interviews with all of the residents and attendings (except plaintiff), who were in the operating room on July 22, 2014, and had determined there was no merit to plaintiff's allegation. Dkt. #131-1. The letter identified the individuals interviewed and stated that their recollection was consistent with Dr. Levy's account. Dkt. #131-1, p.1.

---

[4] Plaintiff's counsel declares that this document was produced in discovery by the SUNY and Kaleida defendants, but not by Dr. Levy or UBNS. Dkt. #131, ¶¶ 3-4. A draft of the letter dated August 25, 2014 which was not on letterhead and contained a signature line for Ms. Drozdowski, but no signature, was produced in discovery by UBNS. Dkt. #129-2, p.19 & Dkt. #131, ¶ 4.

By letter dated March 25, 2015, Ms. Nolan-Weiss explained to plaintiff that because plaintiff's claims involved both SUNY Buffalo and UBNS, the investigation was conducted jointly by UB's Office of Equity, Diversity and Inclusion and UB Associates, Inc.'s Compliance Officer, Lawrence DiGiulio, Esq. Dkt. #110-5 & 110-10. The letter advised plaintiff that the investigation included interviews with plaintiff, Dr. Levy and multiple third-party witnesses, as well as a review of correspondence and relevant policies and procedures. Dkt. #110-10. SUNY Buffalo concluded that the evidence did not support a finding of a hostile environment, but recommended that UB Medical School take appropriate remedial action regarding comments that inappropriately reference race, national origin or other protected factors. Dkt. #110-1-, p.2. SUNY Buffalo did not find sufficient evidence to establish that the termination of plaintiff's volunteer appointment in the Neurosurgery Department violated SUNY Buffalo's discrimination and harassment policy. Dkt. #110-10, p.2. Finally, SUNY Buffalo determined that there was insufficient evidence to demonstrate that a meeting on August 24, 2104 constituted harassment or intimidation in retaliation for plaintiff's complaint rather than an attempt to reach a mutual resolution. Dkt. #110-10, p.2. Finally, SUNY Buffalo advised plaintiff that there was insufficient evidence to support plaintiff's allegation that the absence of assigned residents to a subsequent surgery performed by plaintiff was in retaliation for plaintiff's complaint of discrimination and that his complaints regarding a lack of referrals for subsequent surgeries with UBNS was outside the purview of SUNY Buffalo as it involved private medical practice. Dkt. #110-10, p.3.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), on May 11, 2015 (Dkt. #72-1, ¶ 3), and received a Notice of Right to Sue dated September 16, 2015. Dkt. #1, p.17. Plaintiff commenced this action on December 15, 2015. Dkt. #1. Plaintiff's second amended complaint alleges that Dr. Levy terminated plaintiff in retaliation for his complaints of a hostile work

environment and discrimination based upon race and national origin and that Dr. Levy subsequently exerted pressure upon other doctors to cease patient referrals to plaintiff and interfere with plaintiff's employment relationship with Delaware Medical Group. Dkt. #60. Dr. Levy and UBNS assert a counterclaim for slander. Dkt. #92.

By Decision and Order entered November 3, 2020, in response to plaintiff's motion to compel (Dkt. #102), this Court directed Dr. Levy to provide a privilege log for any documents in his possession being withheld on the grounds of privilege which would otherwise be responsive to document demand No. 9 seeking all statements, reports, and any other communications between Dr. Levy and any other person concerning the events of July 22, 2014. Dkt. #114, pp.13-14. Judge Wolford affirmed the Decision and Order on November 30, 2020. Dkt. #119.

On December 23, 2020, Colleen Mattrey, attorney for Dr. Levy and UBNS, produced an amended privilege log and advised plaintiff "that all emails referenced in our privilege log which bear the subject 'Popat' are exchanges between myself and my clients regarding the complaint filed with Dean Cain as well as litigation regarding your client's allegations." Dkt. #120-3, pp.4-5.

By letter dated December 30, 2020, plaintiff complained that the privilege log was deficient because it failed to provide a sufficiently specific description of the documents withheld, making it impossible for plaintiff to assess whether any of the documents were improperly withheld or whether the privilege may have been waived. Dkt. #120, p.1. Upon review of the exchange between the parties regarding the privilege log description, the Court issued a Text Order determining that it was satisfied that the explanation that all email referenced in the privilege log are exchanges between counsel and her clients regarding the complaint filed with Dean Cain as well as litigation regarding plaintiff's allegation was sufficient to support the claim of attorney-

client privilege. Dkt. #121. The Court directed the parties to proceed with depositions expeditiously. Dkt. #121.

Notwithstanding this directive, on January 26, 2021, plaintiff's counsel advised defense counsel that he had "concluded that some or all of the documents listed on the amended privilege log are not privileged, or that any applicable privilege has been waived." Dkt. #125-7, p.1. Plaintiff's counsel claimed entitlement to discovery of all communications – including attorney-client communications – regarding defendants' internal investigation of plaintiff's allegations. Dkt. #125-7, p.1. Plaintiff argues that because the investigation was conducted pursuant to UB's regular process and policy, it should not be protected by attorney-client privilege. Dkr. #125-7, p.2. In any event, plaintiff argues that defendants' assertion of affirmative defenses waived any privilege. Dkt. #125-7, pp.2-3.

> By email dated January 26, 2021, defense counsel responded:
>
> Magistrate Schroeder has already determined that the documents were properly placed on a privilege log and were communications between myself and my clients regarding impending litigation, and not in the "ordinary course of business." We turned over both our investigation letter to the Dean as well as the letter received from Dean Cain re your client[']s complaint. Emails between myself and a member of management at UBNS who you have sued are not discoverable - period. There is no waiver. We will not be producing any emails between a client and attorney in anticipation of litigation. If you feel the need to bring a motion I invite you to do so.

Dkt. #125-8.

Currently before the Court is plaintiff's motion to compel disclosure of documents referenced in the privilege log on the grounds that those documents are not privileged in the first place or that defendants have asserted affirmative defenses which

-6-

waive the privilege. Dkt. #125-11, pp.6-7. Specifically, plaintiff argues that documents related to the internal investigation are neither privileged nor protected to the extent that the communications involve business rather than legal advice or were prepared in the ordinary course of business. Dkt. #125-11, pp.7 & 9. Plaintiff seeks at least the email dated August 22, 2014 attaching a draft letter to Dr. Cain regarding plaintiff's complaint; the email dated August 25, 2014 attaching a revised letter to Dr. Cain; and another email dated Agusut 25, 2014 between Ms. Mattrey and Ms. Drozdowski, but notes that defense counsel indicates that all emails referenced on the privilege log pertain to, *inter alia*, the complaint filed with Dean Cain, thereby suggesting that they are related to the internal investigation of plaintiff's complaint and discoverable. Dkt. #125-11, p.11. Even if the emails are privileged, plaintiff argues that the privilege was waived by defendants' affirmative defenses which place documents ad communications relating to any internal investigation at issue. Dkt. #125-11, pp.12-16.

Defendants argue that the documents sought are protected by attorney-client privilege because they are communications between Dr. Levy, a representative of UBNS and trial counsel which occurred after plaintiff was terminated from his position at UB Medical School and after plaintiff submitted a complaint of discrimination against them for the purpose of obtaining legal advice. Dkt. #130. pp.2-5. Counsel declares that defendants "consulted with counsel after they terminated Plaintiff from his position and they were notified he was proceeding with Title VI claims against them." Dkt. #129, ¶ 4. Counsel further declares that defendants are not relying on the findings of an investigation or the advice of counsel to justify their termination of plaintiff, but have consistently explained that plaintiff was terminated prior to any complaint by plaintiff due to his conduct during and following a medical operation. Dkt. #129, ¶¶ 21-22. More specifically, defendants argue that they did not assert a single affirmative defense that indicates they relied upon an investigation or advice by outside counsel in making the decision to terminate plaintiff. Dkt. #130, pp.5-6. To the contrary, defendants argue that

their affirmative defenses are based upon the premise that plaintiff was terminated from his position with UBNS because of his performance during surgery on July 24, 2014, as particularized in defendants' response to plaintiff's first set of interrogatories. Dkt. #130, p.6.

Plaintiff replies that disclosure of documents related to defendants' internal investigation is appropriate because defendants' affirmative defenses are based upon the premise that defendants acted in good faith and had legitimate, nondiscriminatory reasons for terminating plaintiff's neurosurgery appointment. Dkt. #131-4, pp.3-4. Plaintiff further replies that defendants were not asked to particularize their sixth affirmative defense, which clearly raises a *Faragher/Ellerth*[5] defense, thereby waiving privilege. Dkt. #131-4, pp.4-6.

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *County of Erie*, 473 F.3d at 419. In the

---

[5] In a discrimination action where a supervisor's harassment does not result in any tangible employment action, the employer may escape liability by establishing, as an affirmative defense commonly referred to as the *Faragher/Ellerth* defense, that the employer exercised reasonable care to prevent and correct any harassing behavior and that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013);*See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

context of an internal investigation, the provision of legal advice need not be the sole purpose of the communication, rather, "[t]he party invoking the attorney-client privilege need only show that the provision of legal advice was a 'primary purpose' of the investigation and of the communications as to which the privilege is claimed." *United States v. Mount Sinai Hosp.*, 185 F. Supp.3d 383, 389-390 (S.D.N.Y. 2016). The burden is on the party asserting the attorney-client privilege to establish each element of this three-part standard. *Koumoulis v. Independent Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 38 (E.D.N.Y. 2013), *aff'd* 29 F. Supp.3d 142 (E.D.N.Y. 2014).

In the instance case, all of the communications set forth on the privilege log are between outside legal counsel[6] and Dr. Levy, Ms. Drozdowski and/or UBNS CEO Michael Cournyea. Dkt. #120-3, p.4. Thus, this is not a case where there is concern with in-house legal counsel fulfilling a dual role of legal advisor and business consultant. *See Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 459-460 (S.D.N.Y. 2019) (acknowledging stricter standard for determining whether to protect confidential information through the attorney-client privilege with in-house legal counsel because they are not as independent as outside counsel). Nor is this a case of counsel attempting to protect investigatory documents created in the ordinary course of business rather than in anticipation of litigation. *See One Beacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271, 2006 WL 3771010, at *5 (S.D.N.Y. Dec. 15, 2006) ("Investigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel."). Defendants do not assert the attorney-work product doctrine on their privilege log and the letter to Dr. Cain, as well as a draft of that letter, which is the subject of emails dated August 22, 2014 and August 25, 2014. Dkt. #120-3, pp.1 & 4. Both have both been disclosed during the course of discovery. Dkt. #120-3, pp.1 & 4.

---

[6] In addition to Ms. Mattrey, three emails included on the privilege log reference attorney Amy Habib Rittling, who initially appeared in this action on behalf of Dr. Levy and UBNS.

There is also no factual basis to suggest that outside legal counsel was consulted in a capacity other than as a lawyer providing legal advice. Counsel declares that she was retained after plaintiff was terminated from his position and her clients were notified that plaintiff was asserting claims of racial discrimination against them. Dkt. #129, ¶ 4. UBNS' Director of Human Resources, Kimberly Drozdowski, affirms that Ms. Mattrey was retained as counsel to provide legal advice due to the nature of the allegations raised by plaintiff and in anticipation of litigation. Dkt. #129-1, ¶ 6. The first two email communications, which are between Ms. Mattrey and Dr. Levy, are dated after plaintiff mailed his letter to Dr. Cain at UB Medical School complaining of racial harassment following Dr. Levy's termination of plaintiff's appointment as Voluntary Clinical Associate Professor in the Department of Neurosurgery at UB Medical School. Dkt. #120-3, p.4. Moreover, Ms. Drozdowski affirms that the limited communication she had with Ms. Mattrey has been strictly for the purpose of obtaining legal advice. Dkt. #129-1, ¶ 8. This is sufficient to establish that the attorney-client privilege applies to the email communications referenced on Ms. Mattrey's privilege log. *See O'Gorman v. Kitchen,* 20-CV-1404, 2021 WL 1292907 at *3 (S.D.N.Y. April 7, 2021) (attorney-client privilege applied where outside legal counsel was retained after the employee was terminated and declared that she was retained to provide legal advice); *Cf. Koumoulis,* 295 F.R.D. at 44-46 (attorney-client privilege did not apply where outside counsel acted as an adjunct member of defendants' human resources team addressing employee's internal complaints and issues relating to employee's job performance prior to employee's termination).

The attorney-client privilege may be waived when the party holding the privilege asserts a claim that in fairness requires examination of protected communications. *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000). "[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the

underlying communications from scrutiny by the opposing party." *Id.* (internal quotation omitted). For example, a party who asserts an advice of counsel defense waives the privilege with respect to such advice. *Id.* at 182-183. Similarly, when an employer puts the reasonableness of an internal investigation of allegations of discrimination at issue by asserting that the employer exercised reasonable care to prevent and correct any harassing behavior and that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided, the employer waives any privilege that might otherwise apply to documents concerning that investigation. *See Robinson v. Vinyard Vines, LLC*, 15 Civ. 4972, 2016 WL 845283, at *4 (S.D.N.Y. March 4, 2016); *Koumoulis*, 295 F.R.D. at 41.

Defendants' Second Amended Complaint clearly asserts a *Faragher/Ellerth* defense. Dkt. #94, ¶ 115. However, defendants deny any intent to rely upon their investigation of plaintiff's allegations or any advice provided by their attorney as a basis for Dr. Levy's decision to terminate plaintiff from his position at UB Medical School. Dkt. #130, pp.6-7. Defense counsel declares that defendants have not indicated that they relied on the findings of an investigation or the advice of counsel and that "their affirmative defense in this action is that Plaintiff was terminated due to his conduct during and following a medical operation." Dkt. #129, ¶¶ 21-22. In reliance upon this representation, the Court finds that defendants have not waived any privilege as to any documents pertaining to that investigation. *See Robinson,* 2016 WL 845283, at *5 (relying on representation that defendants were not relying on the reasonableness of an investigation where plaintiff did not complain of harassment until after she resigned).

## **CONCLUSION**

For the reasons set forth above, plaintiff's motion (Dkt. #125), to compel is denied.

The remaining discovery issues will be addressed separately, at which time an amended scheduling order will be issued.

**SO ORDERED.**

DATED:   Buffalo, New York
September 24, 2021

                               *s/ H. Kenneth Schroeder, Jr.*
                               **H. KENNETH SCHROEDER, JR.**
                               **United States Magistrate Judge**