UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAURIN POPAT, M.D.,
           Plaintiff,

v.                                                    15-CV-1052W(Sr)

ELAD LEVY, MD.,

THE STATE UNIVERSITY OF NEW YORK
AT BUFFALO

UNIVERSITY AT BUFFALO SCHOOL
OF MEDICINE AND BIOSCIENCE,

UNIVERSITY AT BUFFALO
NEUROSURGERY GROUP,

UNIVERSITY AT BUFFALO
NEUROSURGERY, INC.,

and

KALEIDA HEALTH,
           Defendants.

---

## DECISION AND ORDER

This matter was referred to the undersigned by the Hon. Elizabeth A. Wolford, in accordance with 28 U.S.C. § 636(b), for all pretrial matters. Dkt. #17.

Plaintiff Saurin Popat is a medical doctor specializing in otolaryngology and the Director of Head and Neck Surgery for Delaware Medical Group, P.C. ("Delaware Medical"). Dkt. #60, ¶¶ 32-33. On December 18, 2013, upon recommendation by defendant Elad Levy, M.D., Chair of Neurosurgery at State

University of New York at Buffalo School of Medicine and Bioscience ("UB Medical School"),[1] plaintiff was appointed to the position of Clinical Assistant Professor of Neurosurgery at UB Medical School. Dkt. #60, ¶ 18 & Dkt. #108-1, p.142. By letter dated July 23, 2014, Dr. Levy terminated plaintiff's position with the Department of Neurosurgery at UB Medical School effective August 29, 2014. Dkt. #108-1, p.144. Dr. Levy claims that he terminated plaintiff from his position because of plaintiff's attempt to schedule a collaborative surgery when Dr. Levy would be away and because plaintiff deviated from the agreed upon protocol during that surgery on July 22, 2014. Dkt. #110-5, p.3.

Plaintiff's second amended complaint alleges that Dr. Levy terminated plaintiff in retaliation for his complaints of a hostile work environment and discrimination based upon race and national origin and that Dr. Levy subsequently exerted pressure upon other doctors to stop referring patients to plaintiff and interfered with plaintiff's employment relationship with Delaware Medical. Dkt. #60. Plaintiff asserts the following causes of action: (1) discrimination on the basis of race and national origin and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq*. ("Title VII"); (2) retaliation in violation of Title VII; (3) discrimination on the basis of race and national origin, retaliation, and interference with plaintiff's employment relationship with Delaware Medical in violation of the New York State

---

[1] Dr. Levy is also Chair of Neurosurgery at Kaleida Health and Chair of Neurosurgery for University at Buffalo Neurosurgery ("UBNS"), which is part of UBMD, the single largest medical group in Western New York, with more than 500 physicians in 18 medical specialties. Dkt. #60, ¶ 11.

Human Rights Law, Executive Law § 290, *et seq.*, ("NYSHRL"); (4) discrimination and retaliation in violation of 42 U.S.C. § 1981; (5) discrimination and retaliation in violation of 42 U.S.C. § 1983; and (6) common law tortious interference with contract, employment and prospective economic advantage. Dkt. #60. Plaintiff claims loss of wages, benefits, pecuniary opportunities and promotional opportunities and seeks an award of front-pay, back-pay, compensation for loss of future salary and benefits and an award of punitive damages, as well as damages for mental anguish, humiliation, embarrassment and emotional injury. Dkt. #60. Dr. Levy and UBNS assert a counterclaim for slander. Dkt. #92.

Currently before the Court is defendants' motion to preclude plaintiff from introducing billing records from Delaware Medical and to preclude plaintiff's expert witness, Dr. Richard Wall, from testifying regarding damages based upon such records[2] because the records were not produced prior to plaintiff's expert disclosure and were overly redacted so as to render it impossible for defendants to review. Dkt. ##146, 148 & 149. Defendants argue that plaintiff has had open access to the records but refuses to allow defendants to view sufficient information so as to investigate whether the records relate to referrals from UBNS. Dkt. #146-1, ¶ 35. Defendants argue that plaintiff

> has created a scheme whereby Defendants are unable to
> obtain the complete billing records from any source. Dr.

---

[2] Dr. Wall reviewed detailed billing records for 46 patients who were treated by plaintiff in conjunction with UBNS. Dkt. #154-1, p.5. Assuming that plaintiff would have performed most of the procedures that UBNS performed with other surgeons subsequent to July 22, 2014, as he had prior to that date, Dr. Wall opines that plaintiff lost $634,766 revenue from 2015 through 2019 and would lose an additional $4,096,722 in revenue over the course of the next twenty years. Dkt. #154-1, pp.5-7.

> Popat's employer contends that only Dr. Popat is aware of the referrals from UBNS. Dr. Popat then refuses to identify the patients that were referred by UBNS under the guise that doing so would be a HIPAA disclosure. Defendants thus cannot obtain the billing records or even contest the billing records because there is simply no information that confirms these records are in fact relating to patients who may have been referred from UBNS surgeons. The scheme has further created a scenario whereby Dr. Popat, and only Dr. Popat, can verify the referrals were in fact from UBNS providers.

Dkt. #146-1, ¶ 63. Moreover, defendants argue that plaintiff has failed to disclose any billing records for referrals that occurred following 2014, despite admitting at his deposition that he continues to receive referrals from other providers at UBNS. Dkt. #146-1, ¶ 67. In the event that the Court declines to strike plaintiff's expert witness, defendants request that plaintiff be compelled to produce the records unredacted except for patient name, address and date of birth from 2010 through the present and appear for a supplemental deposition. Dkt. #146-1, ¶ 70. Defendants further request that the Court allow them to depose Michael S. Haar, M.D., principal of Delaware Medical, before the deposition of Dr. Wall and prior to the deadline for defendants' expert disclosure. Dkt. #146-1, ¶ 70. Defendants also seek attorneys' fees for the costs of motion practice with respect to the billing records. Dkt. #146-1, ¶ 71.

Plaintiff responds that the records at issue were maintained by a non-party, Delaware Medical, and that he disclosed Linda Gallitto, a member of the billing staff at Delaware Medical as a potential witness in his initial disclosures. Dkt. #150, ¶¶ 4-5. Plaintiff further responds that he disclosed the billing records produced by Delaware Medical upon receipt in accordance with the protective order, which requires redaction of HIPAA protected information and that defendants have failed to demonstrate that the information at issue is not HIPAA protected information. Dkt. #150-23, pp.4-5. Plaintiff also argues that he should not be responsible for defendants' failure to enforce their subpoena against Delaware Medical or their inability to identify

which patients had been referred by UBNS. Dkt. #150, ¶ 7 & Dkt. #150-23, p.6. Plaintiff notes that although the subpoena requests information from 2010 through the present, defendants' discovery demands only covered 2010 through July 22, 2014. Dkt. #150, ¶ 15. More specifically, plaintiff argues that billing records related to referrals subsequent to July 22, 2014 are not responsive to defendants' request for documents supporting his claim of damages. Dkt. #150, ¶ 17. In any event, plaintiff notes that defendants have failed to comply with the Court's directive that UBNS provide a list of all patients referred by UBNS physicians to plaintiff.[3] Dkt. #150-23, p.3. Without this information, plaintiff argues that Delaware Medical is unable to produce billing records for such individuals. Dkt. #150-23, p.7.

Defendants reply that it is clear that plaintiff chose to withhold billing records until his deposition was complete and, when the records were finally produced, to redact them so as to make it impossible for defendants to verify them or challenge the conclusions of plaintiff's expert regarding damages resulting from lost referrals. Dkt. #153, ¶¶ 14-16. Defendants continue to argue that the redaction of the billing records is beyond what is reasonably necessary to comply with HIPAA, particularly given the protective order. Dkt. #153, ¶ 19.

Rule 26(a) of the Federal Rules of Civil Procedure requires a party, without awaiting a discovery request, to provide, *inter alia,* a computation of each category of damages claimed, as well as documents or other evidentiary material upon which such computation is based. Fed. R. Civ. P. 26(b)(1) provides, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount

---

[3] By Decision and Order entered November 3, 2020, the Court directed UBNS to provide plaintiff with a list of all patients referred by UBNS physicians to plaintiff from January 1, 2012 through the present. Dkt. #114, p.17.

> in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely
> benefit. Information within the scope of discovery need not
> be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(e) requires a party to supplement initial disclosures and responses to discovery demands in a timely manner. Any person from whom discovery is sought may move for a protective order from the Court to protect that party from inappropriate disclosure. Fed. R. Civ. P. 26(c)(1). The Court notes that it has endorsed two stipulated protective orders during the course of this litigation - the most recent of which was specifically enumerated as a "Stipulated HIPAA Protective Order." Dkt. ##97-98 & 143-144.

The Court also notes that this is the fifth decision pertaining to discovery disputes among the parties, with two additional discovery motions (Dkt. #158, 160), currently pending. Counsel for the parties should be collectively embarrassed at their inability to craft an appropriate protective order and proceed with discovery of such basic information without the involvement of the Court. The obvious acrimony of the parties toward each other is no excuse to burden the Court with an issue that counsel should have been able to manage with nothing more than basic professional courtesy. However, given the reputations of the attorneys and medical professionals involved in this matter, the Court has every confidence that all legal and ethical obligations pertaining to confidentiality of protected health information will be observed.

Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure requires disclosure of a computation of each category of damages claimed by a party, who must also make available for inspection and copying the documents on which such computation is based. Rule 26(e) of the Federal Rules of Civil Procedure requires a party to supplement its disclosures in a timely manner. Rule 37(c)(1) of the Federal

Rules of Civil Procedure provides that if a party has failed to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information unless the failure was substantially justified or is harmless. Notwithstanding the mandatory language of the rule, the Court of Appeals has instructed district courts to exercise their discretion to consider less drastic alternatives to avoid such a harsh remedy. *See Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 71 (2d Cir. 1988); *Outley v. City of N.Y.*, 837 F.2d 587, 591 (2d Cir. 1988). In exercising such discretion with respect to a request to preclude expert testimony, the district court should consider: (1) the party's explanation for the failure to comply with discovery obligations; (2) the importance of the testimony at issue; (3) the prejudice that the opposing party would suffer as a result of having to prepare to meet such testimony; and (4) the possibility of a continuance. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). Despite the Court's frustration with the party's inability to agree upon an acceptable protective order, in light of the importance of the calculation of damages to plaintiff's ability to prosecute his claims and the current procedural posture of the case as set forth above, which affords defendants sufficient time to access the information necessary to assess Dr. Wall's opinion as to plaintiff's damages so as to obviate any claim of prejudice, the Court determines that preclusion is not warranted.

In accordance with 45 C.F.R. § 164.512(e):[4] (1) within 10 days of the entry of this Decision and Order, plaintiff shall disclose the name and date(s) of service of any patient that was referred to him by any UBNS provider between 2010 and the present; (2) within 10 days of the entry of this Decision and Order, UBNS shall disclose the name and date of referral and/or date(s) of service of any patient that it referred to plaintiff between 2010 and the present; (3) within 60 days of the entry of this Decision and Order, defendants shall serve an updated subpoena upon Delaware Medical

---

[4] 45 C.F.R. § 164.512(e)(1)(i) allows a covered entity to disclose protected health information in the course of any judicial proceeding in response to a court order.

directing Delaware Medical to disclose certified billing records for any patient identified by plaintiff and/or UBNS, with patient name, address and date of birth redacted; (4) within 90 days of the entry of this Decision and Order, defendants may depose plaintiff, at plaintiff's expense, with respect to such referrals and certified billing records; (5) within 90 days of the entry of this Decision and Order, defendants may serve an updated subpoena upon Delaware Medical to depose a representative of Delaware Medical with respect to such referrals and certified billing records; and (6) defendants' expert disclosure shall be due within 30 days of the completion of said depositions. The parties shall not use or disclose the certified billing records for any purpose other than this litigation and shall return or destroy the certified billing records at the conclusion of this litigation.

**SO ORDERED.**

**DATED:**   Buffalo, New York
March 1, 2022

  *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**