UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAURIN POPAT, M.D.,
        Plaintiff,

v.                                                15-CV-1052W(Sr)

ELAD LEVY, MD.,

THE STATE UNIVERSITY OF NEW YORK
AT BUFFALO

UNIVERSITY AT BUFFALO SCHOOL
OF MEDICINE AND BIOSCIENCE,

UNIVERSITY AT BUFFALO
NEUROSURGERY GROUP,

UNIVERSITY AT BUFFALO
NEUROSURGERY, INC.,

and

KALEIDA HEALTH,
        Defendants.

---

## DECISION AND ORDER

This matter was referred to the undersigned by the Hon. Elizabeth A. Wolford, in accordance with 28 U.S.C. § 636(b), for all pretrial matters. Dkt. #17.

Plaintiff Saurin Popat is a medical doctor specializing in otolaryngology and the Director of Head and Neck Surgery for Delaware Medical Group, P.C. ("Delaware Medical"). Dkt. #60, ¶¶ 32-33. On December 18, 2013, upon recommendation by defendant Elad Levy, M.D., Chair of Neurosurgery at State

University of New York at Buffalo School of Medicine and Bioscience ("UB Medical School"),[1] plaintiff was appointed to the position of Clinical Assistant Professor of Neurosurgery at UB Medical School. Dkt. #60, ¶ 18 & Dkt. #108-1, p.142. By letter dated July 23, 2014, Dr. Levy terminated plaintiff's position with the Department of Neurosurgery at UB Medical School effective August 29, 2014. Dkt. #108-1, p.144. Dr. Levy claims that he terminated plaintiff from his position because of plaintiff's attempt to schedule a collaborative surgery when Dr. Levy would be away and because plaintiff deviated from the agreed upon protocol during that surgery on July 22, 2014. Dkt. #110-5, p.3.

Plaintiff's second amended complaint alleges that Dr. Levy terminated plaintiff in retaliation for his complaints of a hostile work environment and discrimination based upon race and national origin and that Dr. Levy subsequently exerted pressure upon other doctors to stop referring patients to plaintiff and interfered with plaintiff's employment relationship with Delaware Medical. Dkt. #60. Plaintiff asserts the following causes of action: (1) discrimination on the basis of race and national origin and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq*. ("Title VII"); (2) retaliation in violation of Title VII; (3) discrimination on the basis of race and national origin, retaliation, and interference with plaintiff's employment relationship with Delaware Medical in violation of the New York State

---

[1] Dr. Levy is also Chair of Neurosurgery at Kaleida Health and Chair of Neurosurgery for University at Buffalo Neurosurgery ("UBNS"), which is part of UBMD, the single largest medical group in Western New York, with more than 500 physicians in 18 medical specialties. Dkt. #60, ¶ 11.

Human Rights Law, Executive Law § 290, *et seq.*, ("NYSHRL"); (4) discrimination and retaliation in violation of 42 U.S.C. § 1981; (5) discrimination and retaliation in violation of 42 U.S.C. § 1983; and (6) common law tortious interference with contract, employment and prospective economic advantage. Dkt. #60. Plaintiff claims loss of wages, benefits, pecuniary opportunities and promotional opportunities and seeks an award of front-pay, back-pay, compensation for loss of future salary and benefits and an award of punitive damages, as well as damages for mental anguish, humiliation, embarrassment and emotional injury. Dkt. #60. Dr. Levy and UBNS assert a counterclaim for slander. Dkt. #92.

Currently before the Court is plaintiff's motion to compel production of nineteen email communications between the State University of New York at Buffalo ("SUNY Buffalo"), and University at Buffalo School of Medicine and Bioscience ("UB Medical School"), and to compel continued deposition of Micael Cain, M.D., the former Dean of UB Medical School, following disclosure of an email exchange between Dr. Cain and Dr. Levy on August 20, 2014. Dkt. #160.

<u>Emails between SUNY Buffalo counsel and Dr. Levy</u>

Plaintiff argues that emails between counsel for SUNY Buffalo/UB Medical School and Dr. Levy are not protected by the attorney-client privilege because they were addressed to Dr. Levy's UBNS email and UBNS policy unambiguously states that employees have no expectation of privacy or confidentiality in their email communications. Dkt. #160-18.

SUNY responds that Dr. Levy's decision to hire a personal attorney does not dissolve the attorney-client relationship between him and counsel for SUNY Buffalo. Dkt. #169. SUNY further argues that plaintiff cannot use UBNS' email policy to obtain otherwise privileged communications. Dklt. #169.

Plaintiff replies that SUNY cannot establish that the disputed emails with Dr. Levy were confidential because UBNS reserved the right to monitor and inspect emails to and from UBNS email accounts. Dkt. #173. Plaintiff also replies that SUNY has failed to establish that the emails were exchanged so that the SUNY defendants could obtain legal advice. Dkt. #173.

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *County of Erie*, 473 F.3d at 419. The burden is on the party asserting the attorney-client privilege to establish each element of this three-part standard. *Koumoulis v. Independent Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 38 (E.D.N.Y. 2013), *aff'd* 29 F. Supp.3d 142 (E.D.N.Y. 2014).

Although privileged corporate communications with counsel necessarily occur through an officer, director or employee, the law is clear that when the client is a

corporation, the attorney-client privilege belongs to the corporation. *Fitzpatrick v. American Int'l Group, Inc*., 272 F.R.D. 100, 107 (S.D.N.Y. 2010); *See Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981) ("[C]ommunications by . . . employees to counsel are covered by the attorney-client privilege."). Thus, SUNY Buffalo controls the privilege over communications between it's counsel and it's Chair of Neurosurgery at defendant UB Medical School irrespective of the fact that Dr. Levy has retained counsel to represent him as an individual defendant and as Chair of Nuerosurgery for defendant UBNS. The fact that such communications occurred through an email account which defendant UBNS was authorized to monitor and inspect does not undermine the confidentiality of such communications given the relationship between SUNY Buffalo and UBNS. *See* Dkt. #1, ¶ 11 (alleging that SUNY Buffalo controls and operates both defendant UB Medical School and defendant UBNS). SUNY Buffalo's privilege log represents that the emails at issue were communications between SUNY Buffalo counsel and SUNY Buffalo employees relating to plaintiff's complaint and charge of discrimination; the fact that one email also copied Dr. Levy's individual attorney does not alter this analysis.

### Continued Deposition of Dr. Cain

Plaintiff argues that Dr. Cain should be required to respond to questions pertaining to an email dated August 20, 2014 that was not disclosed prior to his deposition. Dkt. #160-18.

Defendant responds that the email was disclosed pursuant to a document demand made after completion of Dr. Cain's deposition. Dkt. #169.

Plaintiff replies that although the email was disclosed in response to a document demand served subsequent to Dr. Cain's deposition, it was responsive to multiple document demands served prior to his deposition and should have been available to plaintiff for questioning during Dr. Cain's deposition. Dkt. #173.

The Court agrees that the email at issue was responsive to earlier document demands and should have been available to plaintiff's counsel during Dr. Cain's deposition. As a result, UB Medical School is directed to produce Dr. Cain, at a mutually convenient time within 60 days of the entry of this Decision and Order, at defendants' expense, for no more than one additional hour of questions pertaining to this email and any subsequent communications relating thereto.

**SO ORDERED.**

**DATED:** Buffalo, New York
June 17, 2022

                                              *s/ H. Kenneth Schroeder, Jr.*
                                              **H. KENNETH SCHROEDER, JR.**
                                              **United States Magistrate Judge**