**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**SAURIN POPAT, M.D.,**

    Plaintiff,

v.                    15-CV-1052W(Sr)

**ELAD LEVY, MD.,**

**THE STATE UNIVERSITY OF NEW YORK
AT BUFFALO**

**UNIVERSITY AT BUFFALO SCHOOL
OF MEDICINE AND BIOSCIENCE,**

**UNIVERSITY AT BUFFALO
NEUROSURGERY GROUP,**

**UNIVERSITY AT BUFFALO
NEUROSURGERY, INC.,**

**and**

**KALEIDA HEALTH,**

    Defendants.

---

## DECISION AND ORDER

    This matter was referred to the undersigned by the Hon. Elizabeth A. Wolford, in accordance with 28 U.S.C. § 636(b), for all pretrial matters. Dkt. #17.

    By Decision and Order entered September 29, 2022 (Dkt. #178), the Court resolved plaintiff's motion (Dkt. #158), for sanctions against defendant UBNS for its failure to preserve electronically stored information ("ESI"). On October 7, 2022, plaintiff filed a letter identifying additional issues raised in that motion which were not addressed in the Court's decision. Dkt. #179.

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and its inherent power, a court may reconsider a prior decision at any time before entry of judgment. *Raymond A. Semente, D.C., P.C. v. Empire Healthchoice Assurance, Inc.*, 523 F. Supp.3d 269, 275 (E.D.N.Y. 2021); *See In re U.S.*, 733 F.2d 10, 13 (2d Cir. 1984) ("It is well established that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment."). However, the standard for granting such a motion "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995). Such a motion "should not be granted where the moving party seeks solely to re-litigate an issue already decided." *Id.* Stated another way, a motion for reconsideration should be granted only when the moving party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013). A motion for reconsideration is committed to the sound discretion of the district court. *Esposito v. Suffolk Cty. Comty. Coll.*, 517 F. Supp.3d 126, 134 (E.D.N.Y. 2021).

The Court overlooked plaintiff's request to continue the deposition of Dr. Levy. Dkt. #158-1, p.18. Given that Dr. Levy's deposition was conducted on March 19, 2021 (Dkt. #168-11), prior to the disclosure of the August 20, 2014 email exchange

between Dr. Levy and Dr. Cain,[1] the Court finds it appropriate to permit plaintiff to depose Dr. Levy for no more than one additional hour of questions pertaining to any emails disclosed subsequent to his deposition and any additional communications relating thereto, at UBNS' expense and at a mutually convenient time within 60 days of the entry of this Decision and Order.

The Court misread plaintiff's representation regarding receipt of UBNS referrals (Dkt. #176), as resolving plaintiff's motion to compel documents relating to his claim for damages. Plaintiff claims that between 2010 and July of 2014, he had worked on at least 46 cases that were referrals from and/or joint surgeries with UBNS surgeons, *to wit*, Dr. Leonardo, Dr. Siddiqui, Dr. Budny, Dr. Reynolds, and Dr. Li. Dkt. #158-25, ¶ 5. By July of 2014, plaintiff declares that he and several UBNS surgeons, including Dr. Leonardo and Dr. Siddiqui had been working to develop a specialty practice group focusing on skull base surgery and that he and Dr. Leonardo had separately agreed to share patients and develop a sub specialty practice focusing on endoscopic skull base surgery. Dkt. #158-25, ¶¶ 6-7. At his deposition, however, plaintiff conceded that there was no agreement that he would receive all UBNS referrals for surgeries within the realm of plaintiff's expertise. Dkt. #168-14, p.44.

Plaintiff "seeks to demonstrate the number or procedures performed by UBNS physicians with specialists whose training and expertise are similar to his own"

---

[1] By Decision and Order entered June 17, 2022, the Court directed UB Medical School to produce Dr. Cain for further deposition relating to the August 20, 2014 email because the email was responsive to earlier document demands but was not disclosed prior to Dr. Cain's deposition. Dkt. #175.

so that he can "determine how many procedures likely would have been referred to [plaintiff] if UBNS had not severed its relationship with him." Dkt. #158-28, p.26. More specifically, plaintiff seeks

> documents reflecting skull base, craniofacial, neck/cervical, and/or neuroendoscopic cases that UBNS surgeons performed jointly with specialists in otolaryngology/ENT, head & neck surgery, craniofacial surgery, plastic & reconstructive surgery, and oral & maxillofacial surgery from January 1, 2010 through the present.

Dkt. #158-1, ¶ 49. For each procedure, plaintiff seeks identification of the particular type of procedure; the date of the procedure; the name of the UBNS surgeon; and the name of the specialist. Dkt. #158-19.

UBNS argues that plaintiff's demand is overbroad, unduly burdensome and seeks irrelevant information, but has disclosed a spreadsheet identifying: (1) UBNS surgeons who performed surgeries with plaintiff between January 1, 2010 and March 12, 2020 ("Popat/UBNS Surgeries"); and (2) UBNS surgeons who performed surgeries with other neuroendoscopy surgeons between January 1, 2010 and March 12, 2020 ("Nueroendoscopy/UBNS Surgeries"). Dkt. #158-20 & Dkt. #158-21, p.3. Plaintiff seeks an update of each of these documents through the present date and also seeks disclosure of procedure codes for the Neuroendoscopy/UBNS Surgeries. Dkt. #158-21, p.3.

UBNS offered to compile a list of UBNS surgeries with other surgeons involving billing codes derived from the Popat/UBNS Surgeries (Dkt. #158-22, p.2), but plaintiff objected to the limited procedure codes. Dkt. #158-24, p.2. UBNS reiterated its

-4-

position that plaintiff's demand was grossly overbroad, arguing:

> just because [plaintiff] may believe he could or would have been involved in performing all surgeries in [the categories of skull base, craniofacial, neck/cervical, and/or neuroendoscopic cases], that simply is not based on what he historically did perform with UBNS surgeons and/or is pure speculation, and therefore does not require us to access and/or disclose information regarding surgeries that [plaintiff] hoped he would have participated in sometime in the future.

Dkt. #158-6, p.2.

To resolve the dispute, UBNS repeated its willingness

> to provide the data consistent with surgeries performed by your client, from 2010 through July 2021. This data will include the requested updates for the co-surgery list already provided and will further expand upon the procedures performed by UBNS surgeons with other ENT surgeons in the Western New York Area.

Dkt. #158-6, pp.2-3.

Plaintiff rejected this compromise, explaining:

> we do not believe that using billing codes is an effective way to identify responsive records in the possession of UBNS. The outside specialist and the UBNS surgeon would naturally perform different functions during a given procedure, so the billing codes used by the outside specialist would not necessarily appear in the UBNS billing records.

Dkt. #158-7, pp.2-3.

UBNS argued that plaintiff's "high hopes that he would be the exclusive ENT provider to all UBNS physicians from 2010 until his retirement" was an insufficient

basis for the discovery demanded. Dkt. #158-8, p.2. UBNS noted that it had disclosed all patients upon whom UBNS surgeons and plaintiff performed co-surgeries. Dkt. #158-8, pp.2 & 3.

The Court agrees with plaintiff that limiting disclosure to the procedure codes suggested by UBNS is insufficient to identify the scope of patients that could have been referred to plaintiff had the specialty practice group continued to develop. However, the Court agrees with UBNS that the continued development of such a specialty group was uncertain and notes plaintiff's acknowledgment that there was no agreement at the time of the incident in July of 2014 that UBNS would refer all cases that required plaintiff's expertise exclusively to plaintiff. Therefore, the Court determines that plaintiff's demand for all referrals from UBNS for any surgery within the scope of plaintiff's expertise is overbroad and should be limited to those providers at UBNS who referred patients to plaintiff prior to the alleged retaliation. Furthermore, the Court determines that plaintiff's demand for such records through the present date is excessive and limits the disclosure to the date of disclosure of the Popat/UBNS Surgeries and Neuroendoscopy Surgeries, *to wit*, March 12, 2020. This affords plaintiff the opportunity to compare the trajectory of referrals in the 4 years prior to the alleged retaliation against more than 5 years of subsequent referrals without unduly burdening UBNS or incorporating data skewed by the emergence of the COVID-19 pandemic. Accordingly, UBNS is directed to disclose and/or to supplement its disclosure to provide, subject to the existing protective order, identification by date of service and procedure codes of any referrals by UBNS surgeons Dr. Leonardo, Dr. Siddiqui, Dr.

Budny, Dr. Reynolds, and Dr. Li to plaintiff or any other surgeon unaffiliated with UBNS (who shall be identified by name), for skull base, craniofacial, neck/cervical and/or neuorendoscopic surgery from 2010 through March 12, 2020.

        SO ORDERED.

**DATED:**     Buffalo, New York
               October 31, 2022

                                           *s/ H. Kenneth Schroeder, Jr.*
                                           **H. KENNETH SCHROEDER, JR.**
                                           **United States Magistrate Judge**