UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAURIN POPAT, M.D.,

        Plaintiff,

        v.

ELAD LEVY, M.D., THE STATE UNIVERSITY OF NEW YORK AT BUFFALO, UNIVERSITY AT BUFFALO SCHOOL OF MEDICINE AND BIOSCIENCE, and THE UNIVERSITY AT BUFFALO NEUROSURGERY, INC.,

        Defendants.

BENCH STATEMENT

1:15-CV-01052 EAW

---

**THIS STATEMENT DOES NOT CONSTITUTE A PUBLISHED DECISION AND ORDER OF THIS COURT. IT IS LIMITED TO THE FACTS OF THIS CASE AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY OR OTHERWISE USED IN UNRELATED CASES BEFORE THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

    My Pretrial Order filed on August 9, 2023 (Dkt. 195), required the Plaintiff to file by November 12, 2024, proposed jury instructions as to his causes of action and the Defendants to file proposed jury instructions on any affirmative defense or other issue on which they had the burden of proof. The Pretrial Order stated that instructions on the standard issues addressed in every civil case did not need to be filed.

    Dr. Popat filed his instructions in accordance with the Pretrial Order at Docket 250. Dr. Levy and UBNS filed nothing; UB and UB Med filed instructions

at Docket 243, but the instructions did not address affirmative defenses or other issues on which the Defendants would have the burden of proof.  Instead, they primarily dealt with instructions on standard issues and also contained a brief instruction on the elements of a Title VII Retaliation Claim.

The Pretrial Order also provided that any objections to the instructions must be filed at least one week before the pretrial conference.  And any other proposed instructions based on events occurring at trial must be filed as soon as possible.

Dr. Popat in accordance with the Pretrial Order filed objections to the UB and UB Med instructions on December 9, 2024, at Docket 261.  None of the Defendants filed any objections to Dr. Popat's instructions.  I questioned defense counsel about this at the pretrial conference conducted on December 16, 2024—because I was surprised that no objections were filed—but defense counsel confirmed on the record that they had no objections to Dr. Popat's proposed instructions.  This discussion was at page 18 of the transcript filed at Docket 267.

Dr. Popat's proposed instructions addressed, among other things, the essential elements that he must prove by a preponderance of the evidence to establish a retaliation claim under Title VII, Section 1981, and the NYSHRL, as follows:  (1) participation in protected activity; (2) that is known to the employer; (3) a material adverse action; and (4) a causal connection between the protected activity and adverse action.  (Dkt. 250 at 7).  In that proposed instruction, Dr. Popat states:  "It is not in dispute that the University Defendants and UBNS were aware that Dr. Popat engaged in a protected activity when he first orally complained and

then sent a letter of complaint to the University Defendants. Accordingly, you need only decide the third and fourth elements of the claim." (Dkt. 250 at 7). In support of that contention, Dr. Popat cited my Summary Judgment Decision and Order filed at Docket 237, page 24.

UB and UB Med's proposed instruction on the retaliation claim filed at Docket 243-1 at page 9, also listed the same four elements but contained no language about the first two elements not being disputed. Dr. Popat filed objections to that proposed instruction in part based on the failure to concede the first two elements. (Dkt. 261 at 11).

Nobody raised at the pretrial conference on December 16, the fact that there was apparently a disagreement as to whether the first two elements of a retaliation claim were in dispute. However, when the briefing was filed with respect to the appropriate scope of evidence that is admissible concerning the alleged race discrimination in this case, it became apparent that the Defendants were disputing whether Dr. Popat engaged in protected activity—namely, whether his complaint of discrimination was genuine. And I confirmed that on the record at the appearance on January 10, 2025. (Page 40 of transcript of that proceeding, filed at Docket 278).

The law is clear that for a plaintiff to establish that he engaged in protected activity, he "need not establish that the conduct he opposed was actually a violation of Title VII, but only that he possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." *Summa v.*

- 3 -

*Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013).  In other words, the plaintiff's belief must be both "subjectively genuine" and "objectively reasonable."  *Spadola v. NY City Transit Auth.*, 242 F. Supp.2d 284, 292 (S.D.N.Y. 2003).  "[T]he reasonableness of the plaintiff's belief is assessed in light of the totality of the circumstances."  *Spadola*, 242 F. Supp.2d at 291.  I would encourage all counsel to read the *Spadola* case, as it deals with a situation like this one where the employer is contending that the employee used the complaint process as a tactical coercive weapon as opposed to a means to legitimately protest a violation of Title VII.

Now, before I go any further, I want to correct some things I've said on the record.  First, it was incorrect to the extent I suggested at the pretrial conference on December 16, 2024, that Dr. Popat's subjective good faith belief about the genuineness of his discrimination complaint was not relevant—and I didn't use those exact words but Plaintiff's counsel is now essentially arguing that that is what I said in his filing at Docket 283.  That is not a correct statement of the law.  As the previous caselaw I cited makes clear, Dr. Popat's subjective good faith belief is relevant.

And contrary to what I said on the record on January 10, 2025, which defense counsel has repeated in their most recent submission (Dkt. 280 at page 1), the belief of the employer is of no moment to this inquiry—it is the belief of the employee that is at issue.  *Summa*, 708 F.3d at 126.  In other words, whether Dr. Levy or the other defendants believed Dr. Popat was acting in bad faith is not the

- 4 -

relevant inquiry—rather the inquiry is whether Dr. Popat was acting in bad faith. Judge Lynch's decision in *Sanders v. Madison Square Garden, L.P.*, 525 F. Supp. 2d 364 (S.D.N.Y. 2007), is instructive.  Like the *Spadola* case, I would encourage all counsel to read it.

There, Judge Lynch—much like me at the January 10 conference—had indicated that it could be a defense to a Title VII claim if the employer believed the employee was engaged in bad faith behavior because under those circumstances the employer would not have acted with a retaliatory motive, but as Judge Lynch acknowledged in *Sanders*, that is a mistaken statement of the law.

> In the hypothesized situation in which the employer fires an employee for what he erroneously believes was a bad faith complaint, the . . . elements [of a retaliation claim] are satisfied: the activity was in fact protected, [the employee] suffered an adverse employment action, and there was a direct causal connection between [the] protected activity and [the] firing. Indeed, it is clear in such a case that the employer fired [the employee] *because of* what is, on these assumptions, in fact protected activity.
>
> This is not just a matter of too close a verbal parsing of language in court opinions.  There is a good reason why this is so.  Contrary to what the Court indicated in the summary judgment opinion, if an employer fires an employee because he believes [his] otherwise-protected activity opposing alleged [race] discrimination amounts to extortion or obstruction of justice, this is not a firing for a reason distinct from her oppositional behavior.  On these assumptions, if the employer's "knowledge" of the employee's conduct actually "influence[s] the manner and timing of" the employee's discharge, the employer is in fact firing the employee *because of* the employee's protests, and not for some other reason.
>
> If an employer were permitted to fire employees who protested alleged illegal discrimination, simply because the employer believed the complaints were unfounded or malicious, the employees' protection would be illusory.  Employers could easily make false

>claims that they disbelieved in the employees' good faith. But it is not just a question of possible false defenses. Undoubtedly, many employers do in fact believe that employees' complaints of discrimination are completely without merit. But the law requires the employer to tolerate such complaints, and not to retaliate because of them. So long as the employee in fact acts in good faith when she brings a discrimination complaint, she is absolutely protected against retaliation for her complaint, even if the employer's alleged conduct does not actually violate Title VII. She only loses this protection if she is *in fact* acting in bad faith. Although employees who make up false complaints of discrimination are not protected by the act, if an employer chooses to fire an employee for making false or bad faith accusations, he does so at his peril, and takes the risk that a jury will later disagree with his characterization.

*Sanders*, 525 F. Supp. 2d at 366-67. In other words, it is no defense to the retaliation claims if Dr. Levy took adverse employment action against Dr. Popat because Dr. Levy believed that Dr. Popat made his complaint of race discrimination in bad faith. That still would qualify as prohibited retaliatory conduct. But in order to establish a retaliation claim and show that he engaged in protected activity, Dr. Popat must prove that he had a good faith, objectively reasonable belief that he was complaining about conduct protected by Title VII.

The Defendants have claimed in their letters filed at Docket numbers 279 and 280, that they did not object to the Plaintiff's jury instructions where he indicated that the first two elements of a retaliation claim were not in dispute because, among other things, they assumed that the Pretrial Order was referencing Federal Rule of Civil Procedure 51. This explanation make no sense, it is contradicted by both my Pretrial Order and Rule 51 (which specifically contemplates that the Court may order the filing of written instructions at an earlier

time than specified by the Rule), and I find the explanation not credible. Of course, factual issues that arise at trial and that may not be able to be anticipated can justify filing instructions during the trial and prior to the charge conference or raising objections to previously-filed instructions. But that is not what occurred here.

That said, the Plaintiff has cited no legal authority for the concept that he should somehow be excused from having to prove the essential elements of each cause of action at issue because the Defendants—or more specifically their counsel—were not as attentive and diligent as they should have been in asserting objections pre-trial to proposed jury instructions. Nor has Plaintiff cited any legal authority for the principle that a finding that there is no issue of fact on one of the elements of a claim for summary judgment purposes means that a party is precluded from contesting that fact at trial.

I've gone back and reviewed the summary judgment papers and it is clear that Dr. Levy raised the factual issue of the discrepancy in the timeline regarding when the termination was effective and when Dr. Popat made his written complaint, implicitly suggesting that his complaint was not genuine. (*See* Dkt. 207-2 at 27; Dkt. 219 at 20; Dkt. 230 at 11). While the issue of whether Dr. Popat's complaints of race discrimination were genuine and reasonably objective was arguably raised as a factual matter, there was no clear legal argument by the Defendants in that regard in the summary judgment papers. But just because I concluded in the summary judgment decision that there was no issue of fact on that record as to whether Dr. Popat engaged in protected activity, does not mean that Dr. Popat is

- 7 -

excused from having to prove his case. There were a lot of issues at play in that summary judgment briefing—including who was an employer or not an employer. And the bottom line is that summary judgment was not granted in favor of either party on the retaliation claim—and yet, that is essentially what the Plaintiff is contending here, that there was a ruling as a matter of law in his favor on some of the elements of his retaliation claim. That is not an accurate recitation of the record.

Put simply, Plaintiff's submission at Docket 283 misapprehends his burden. He seems to suggest that the Defendants' conduct or failure to object somehow constitutes a concession of certain elements of his retaliation claim, and their attempt to now contest the protected activity element is too little too late. But it is Plaintiff who has brought a retaliation claim, and the lack of protected activity is not a defense to that claim—rather, the existence of protected activity is an essential element that the Plaintiff must prove in order to be successful with that claim.

And as much as the Plaintiff criticizes the Defendants' for their evolving position in this regard, his position has also been one of evolution—opposing the motion *in limine* filed by the University Defendants at Docket 240 by arguing among other things that he had to establish that he engaged in protected activity, and excluding the evidence of Dr. Levy's alleged discriminatory remarks "would prevent Plaintiff from showing what the protected activity was that he participated in." (Dkt. 258 at 6).

Plaintiff argues in his filing at Docket 283 that the first two elements of his retaliation claim were "long-considered to be not at issue" (Dkt. 283 at 5) but his citations for that principle do not support the contention.  Most importantly, the citations to the Defendants' purported concessions on this point do not stand for what the Plaintiff contends.  Acknowledging that the Plaintiff made complaints of race discrimination is not the same as conceding that the Plaintiff need not prove that he made those complaints in good faith and that they were objectively reasonable.

So I disagree that Plaintiff does not need to establish that he engaged in protected activity to succeed on his Title VII, Section 1981 and NYSHRL retaliation claims.  While Plaintiff need not establish that the conduct he opposed was actually a violation of the non-discriminations laws, he does need to prove that he possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute.  And because of that, the details of what occurred during the surgery on July 22, 2014, are relevant.  A jury will <u>not</u> be able to assess whether Dr. Popat's belief was in good faith and reasonable without an understanding of the events that led to his filing of the discrimination complaint. Consistent with the case law, "[e]vidence having the singular purpose of proving the truth of the underlying discrimination" will not be relevant, *Orsaio v. New York State Dep't of Corr. & Cmty. Supervision*, No. 617CV00685BKSTWD, 2022 WL 351827, at *3 (N.D.N.Y. Jan. 14, 2022), *aff'd*, No. 22-596, 2023 WL 3410554 (2d Cir. May 12, 2023), and if there is some evidence sought to be admitted only for

that purpose and there is an objection, I will sustain it.  But at this point I do not see that any evidence concerning the events occurring in the operating room on July 22, 2014, would be admitted only for purposes of providing the truth of the underlying discrimination.

I would also note that the claimed prejudice by the Plaintiff—that the jury will focus on the dismissed discrimination claims as opposed to the retaliation claims—will be addressed with an instruction to the jury that the claims at issue are not discrimination but rather retaliation.  I also do not find the claim of prejudice persuasive when one considers that had Plaintiff had his way, he would be going to trial with both a claim of discrimination and retaliation.  The only reason he is not is because I found that there was no merit to the discrimination claim.  Again, as I have previously said, it would be inappropriate to tell the jury that I dismissed the discrimination claim.  But it would be unfairly prejudicial and inappropriate for me to prevent the Defendants from challenging the good faith nature and objective reasonableness of Plaintiff's complaint.

In addition, we've only been discussing the issue in the context of the retaliation claims under Title VII, Section 1981 and the NYSHRL.  The Section 1983 First Amendment retaliation claim is not evaluated under the same standard. "In general, a plaintiff asserting a First Amendment retaliation claim must show (1) that he engaged in constitutionally protected speech or conduct, (2) that defendants took an adverse employment action against him, and (3) that there was a causal connection between the protected activity and the adverse action."

*Caraccilo v. Vill. of Seneca Falls, N.Y.*, 582 F. Supp. 2d 390, 405 (W.D.N.Y. 2008), *on reconsideration* (Sept. 30, 2008). As the Plaintiff states in his proposed jury instruction, Freedom of Speech protects the right of public employees to speak out on issues of public concern. There is a legal question for the Court in these cases as to whether the employee's speech involved a matter of public concern and whether the government employer's interest in avoiding disruption outweighs the employee's interests in speaking out. However, when the underlying facts are disputed, it may not be possible for the Court to determine the legal issues until those factual disputes are resolved—which can be done through special interrogatories directed to the jury. The truthfulness of the statement that is at issue can be a relevant issue for purposes of this analysis. But as the court explained in *Bovell v. City of Mount Vernon*, No. 21-CV-1621 (AEK), 2023 WL 3559544, at *13 (S.D.N.Y. May 18, 2023): "False speech is still entitled to First Amendment protection, *as long as it is not made with knowledge or reckless disregard of its falsity*." The Court cited both *Anderson v. Cahill*, 417 F. App'x 92, 94 (2d Cir. 2011) and *Reuland v. Hynes*, 460 F.3d 409, 414 (2d Cir. 2006), in support of those principles.

Thus, whether Dr. Popat filed a false complaint of discrimination appears to be a relevant inquiry for the First Amendment retaliation claim, thus making the events that occurred in the operating room on July 22, 2014, relevant and admissible. But there has been no briefing on this issue for purposes of this trial, and it needs to be done. The instruction provided by the Plaintiff is wholly

insufficient to address the 1983 claim. And it's frankly not clear to me whether the Defendants are contesting that the speech was protected.

Finally, with respect to the tortious interference with prospective economic relations claim, according to the New York Pattern Jury Instructions, the elements that a plaintiff must prove are as follows: (1) defendant's knowledge of plaintiff's business opportunity with another party, (2) defendant's intentional interference with that opportunity, (3) defendant's use of **wrongful means or sole purpose of inflicting harm**, (4) a showing that the contract or prospective business relationship would have been entered into but for defendant's interference, and (5) resulting damages. Thus, Dr. Levy's intent appears to be directly at issue with this claim and therefore it is relevant why he did what he did, thus making the events in the operating room directly relevant.

I would note that the Plaintiff has proposed an instruction where the jury would find wrongful means proven if it finds for Dr. Popat on the retaliation claims. The Plaintiff has also proposed instructing on vicarious liability against UBNS, even though the claim has been dismissed as against UBNS. This is an example of the puzzling nature of the Defendants' failure to file any objections to the proposed instructions, but notwithstanding that failure, it would be error for me to provide an instruction that is contrary to law.