UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SAURIN POPAT, M.D.,

          Plaintiff,

    -v-

ELAD LEVY, M.D., THE STATE
UNIVERSITY OF NEW YORK AT
BUFFALO, UNIVERSITY AT
BUFFALO SCHOOL OF MEDICINE
AND BIOSCIENCE, and UNIVERSITY
AT BUFFALO NEUROSURGERY, INC.,

          Defendants.

_____

**DECISION AND ORDER**

1:15-CV-01052 EAW

## <u>INTRODUCTION</u>

Earlier this year, after almost ten years of hotly-contested litigation, Plaintiff Saurin Popat, M.D. ("Plaintiff" or "Dr. Popat") presented his claims to a jury. He did not win. The disappointment felt by Plaintiff and his counsel is understandable. They likely second-guessed trial strategy and contemplated how the proof could have been presented differently.

But what is not understandable—and indeed intolerable—is their attempts to misconstrue the trial record and invent facts, even going so far as to submit a sworn declaration of counsel containing falsities. These tactics are not only unconvincing, but go

beyond the bounds of reasonable advocacy.  For the reasons outlined below, Plaintiff's pending motion under Rules 50(b) and 59 is denied.  (Dkt. 318).

## BACKGROUND

Plaintiff is a medical doctor specializing in otolaryngology, and he commenced this action on December 15, 2015, asserting claims against various defendants arising out of the termination of his faculty appointment with the University at Buffalo Neurosurgery Department on August 29, 2014.  (Dkt. 1).  Upon the completion of discovery, the Court granted summary judgment on some claims and against some defendants, leaving the following claims and defendants for trial:  (1) retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*., against defendants the State University of New York at Buffalo ("UB") and the University at Buffalo School of Medicine and Biomedical Sciences ("UB MED") (collectively, "the University Defendants"); (2) retaliation under Title VII against defendant University at Buffalo Neurosurgery, Inc. ("UBNS"); (3) retaliation under 42 U.S.C. § 1981 against UBNS and defendant Elad Levy, M.D. ("Dr. Levy"); (4) retaliation under the New York State Human Rights Law, New York Executive Law §§ 290, *et seq*. ("NYSHRL"), against UBNS and Dr. Levy; (5) First Amendment retaliation under 42 U.S.C. § 1983 against Dr. Levy and UBNS; and (6) tortious interference with prospective economic advantage against Dr. Levy.  (Dkt. 237).[1]

---

[1]    The University Defendants, UBNS, and Dr. Levy will be referred to collectively herein as "Defendants."

A jury trial commenced on January 17, 2025, and continued until January 29, 2025, when a verdict was returned for Defendants. (Dkt. 311). The jury concluded that Plaintiff failed to prove by a preponderance of the evidence that he was an employee of UB and UB MED. (*Id*. at 1). Thus, in accordance with the Court's instructions, because Plaintiff's theory of liability against UBNS was that he was jointly employed by that entity with UB and UB MED, and because Plaintiff needed to prove an employer-employee relationship[2]

---

[2]      As recognized by the Court in ruling on the parties' summary judgment motions:

> "Title VII itself defines an employee as 'an individual employed by an employer.' In applying this somewhat 'circular' definition, we use a two-part test." *United States v. City of N.Y.*, 359 F.3d 83, 91 (2d Cir. 2004) (quoting 42 U.S.C. § 2000e(f)). First, courts determine whether a plaintiff was "hired by the putative employer" by establishing that the plaintiff "received remuneration in some form for her work." *Id*. at 91-92. "This remuneration need not be a salary, but must consist of 'substantial benefits not merely incidental to the activity performed.'" *Id*. at 92 (citing *York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 126 (2d Cir. 2002) (internal citation omitted)).

> If remuneration is established, courts turn to a factor test, drawn from the common law of agency, set forth by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ("Reid") "to determine whether an employment relationship exists." *Id*. No one *Reid* factor is dispositive and other factors may be considered, but the greatest weight is given to "the hiring party's right to control the manner and means by which the product is accomplished.". . . The other *Reid* factors are: "The skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

(Dkt. 237 at 26-27).

to recover under Title VII, § 1981, and the NYSHRL, the jury returned a verdict for Defendants on all causes of actions based on those statutes as well as § 1983.  The jury also found that Plaintiff had not proved by a preponderance of the evidence that Dr. Levy interfered with Plaintiff's prospective economic advantage.  (*Id*. at 2).  Accordingly, judgment was entered for Defendants on January 30, 2025.  (Dkt. 314).

On February 27, 2025, Plaintiff timely filed a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and a new trial under Rule 59.  (Dkt. 318). Plaintiff asserts three grounds to support his motion:  (1) "there was no evidentiary basis to find that Plaintiff did not receive remuneration in the form of annual stipends" and thus Plaintiff is entitled to judgment as a matter of law on that issue; (2) the Court provided insufficient notice that "it was placing the antecedent question of remuneration back at issue" and thus Plaintiff was substantially prejudiced and is entitled to a new trial; and (3) the conclusion that Plaintiff was not an employee was against the weight of the evidence and therefore Plaintiff is entitled to a new trial.  (*Id*. at 2).  Defendants filed papers in opposition to Plaintiff's motion on March 28, 2025 (Dkt. 321; Dkt. 322), and Plaintiff filed reply papers on April 11, 2025 (Dkt. 323).[3]

---

[3]     Plaintiff's notice of motion requested oral argument (Dkt. 318 at 1), but given its familiarity with the record the Court concluded that oral argument was unnecessary (*see* Dkt. 319 (Text Order indicating that if the Court concludes oral argument is unnecessary, the matter will be deemed submitted and decided on the papers)).  *See AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 226 (2d Cir. 1999) ("[A] district court's decision whether to permit oral argument rests within its discretion.").

## DISCUSSION

### I.    Plaintiff's Motion for Judgment as a Matter of Law

#### A.    Legal Standard

Pursuant to Rule 50, the Court may grant a motion for judgment as a matter of law if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" opposing the request. Fed. R. Civ. P. 50(a). The same standard applies when, as here, a party renews its request for judgment as a matter of law after the jury trial is complete. *See* Fed. R. Civ. P. 50(b).

"In ruling on a motion for judgment as a matter of law, the court may not itself weigh credibility or otherwise consider the weight of the evidence; rather, it must defer to the credibility assessments that may have been made by the jury and the reasonable factual inferences that may have been drawn by the jury." *Williams v. Cnty. of Westchester*, 171 F.3d 98, 101 (2d Cir. 1999); *see also Stevens v. Rite Aid Corp.*, 851 F.3d 224, 228 (2d Cir. 2017) ("Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in his favor." (citation and alteration omitted)). Accordingly, the Court may not grant judgment as a matter of law unless "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." *Williams*, 171 F.3d at 101 (alterations omitted and quoting *Cruz v. Loc. Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1154 (2d Cir. 1994)).

This "standard places a particularly heavy burden on the movant where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Morse v. Fusto*, 804 F.3d 538, 546 (2d Cir. 2015) (quotations omitted).

###    B.    Plaintiff is Not Entitled to Judgment as a Matter of Law

Plaintiff contends that he is entitled to judgment as a matter of law that he received remuneration from the University Defendants. (Dkt. 318-10 at 10-11). The Court disagrees.

###        1.    Plaintiff's Rule 50(b) Motion is Mooted by Resolution of the Rule 59 Motion

Plaintiff clarifies in his reply papers that he is "asking only that, <u>if the Court grants him a new trial</u>, *the specific issue of remuneration* be ruled upon as a matter of law and not given to the jury for resolution." (Dkt. 323-4 at 5 (underlining added)).[4] Thus, Plaintiff's Rule 50(b) argument depends on the Court granting Plaintiff a new trial under Rule 59. Because the Court concludes for the reasons below that Plaintiff is not entitled to relief under Rule 59, his motion under Rule 50(b) is accordingly moot.

###        2.    Plaintiff is Not Entitled to Rule 50(b) Relief on the Issue of Remuneration

Even if a live controversy, the record does not support Plaintiff's request for judgment as a matter of law on remuneration. To be sure, based on the summary judgment

---

[4]    Plaintiff takes Defendants to task for mischaracterizing his Rule 50(b) argument (Dkt. 323-4 at 4-5), but Plaintiff's initial motion papers were inconsistent about whether he was requesting Rule 50 relief on the issue of remuneration only or employment generally, (*see* Dkt. 318-10 at 10 (Plaintiff arguing that "there was not a legally sufficient evidentiary basis for the jury to find that Plaintiff was not an employee")).

record, the Court concluded that while issues of fact precluded any conclusion about whether the University Defendants directly employed Plaintiff (and thus whether UBNS jointly employed Plaintiff with the University Defendants), there was no dispute that Plaintiff received stipends from the University Defendants and that was sufficient to constitute proof of remuneration and move on to the second step of the employer/employee analysis. (Dkt. 237 at 27 (quoting *Summa v. Hofstra Univ.*, 2011 WL 1343058, at *11 (E.D.N.Y. April 7, 2011) (holding that a stipend is remuneration), *aff'd in part, vacated on other grounds in part*, 708 F.3d 115 (2d Cir. 2013)).[5]

But despite the non-contested nature of this fact during summary judgment, Defendants contested it at trial. *See Cortes v. City of New York*, No. 14CV03014LDHRML, 2019 WL 5592853, at *4 (E.D.N.Y. Oct. 30, 2019) (statement of facts on summary judgment motion does not mean that facts are admitted for purposes of trial); *Garcia v. Vill. Red Rest. Corp.*, No. 15 CIV. 6292 (RWL), 2018 WL 1166723, at *1 (S.D.N.Y. Feb. 15, 2018) (even though defendants did not contest certain facts on summary judgment, those facts were not deemed admitted for purposes of trial).

Plaintiff testified during his direct examination that he received annual stipends of $5,000, as well as other "very important" benefits, for his work at UB MED. (Dkt. 320 at 15-19). Four documents were admitted into evidence during Plaintiff's testimony concerning these stipends (letters dated December 17, 2014; December 29, 2015;

---

[5] On summary judgment, both Plaintiff and the University Defendants agreed that Plaintiff received nominal stipends on a yearly basis from the Otolaryngology Department for his teaching efforts. (Dkt. 206-2 at ¶ 5; Dkt. 206-3 at 32-36; Dkt. 211-1 at ¶ 43).

December 15, 2017; and December 16, 2018). (*Id*. at 16; *see* Dkt. 313 at 2). But Dr. Michael Cain, the former dean of UB MED,[6] testified during examination by counsel for the University Defendants, that stipends were not "officially" paid or required. (Dkt. 309 at 112). Dr. Cain also testified that while there was no rule against discretionary bonuses being paid to volunteer faculty, only one practice plan of which he was aware had ever paid such bonuses and University monies could not be used to pay such bonuses. (*Id*. at 112-13). Dr. Cain further testified that there was no rule dictating that monies must be paid to volunteer faculty in a set amount or at regular intervals. (*Id*. at 113).[7] Plaintiff's counsel did not cross-examine Dr. Cain on this testimony or any of his testimony related to the relationship between volunteer faculty and the University Defendants. (*See* Dkt. 309 at 125-128). In other words, Dr. Cain's testimony addressing issues related to whether Plaintiff was paid remuneration by and was an employee of the University Defendants, was unchallenged.

---

[6]    Dr. Cain was called as part of Plaintiff's case-in-chief on January 27, 2025. (Dkt. 306). Because the University Defendants also planned to call Dr. Cain as a witness, they presented his direct testimony at the same time to avoid having to recall him later.

[7]    During this portion of Dr. Cain's testimony, he was asked by counsel for the University Defendants about the payment of "money" to volunteer faculty, without specification as to whether the money was in the form of a stipend, discretionary bonus, or some other form. (Dkt. 309 at 113). No follow up questions were asked by Plaintiff's counsel on this issue. Thus, when the University Defendants' counsel argued during Rule 50 motions that Dr. Cain's testimony showed that no stipends were paid because there was not a "fixed sum of money paid periodically over regular intervals", the Court commented that nobody "drilled down" with Dr. Cain on the stipends issue. (Dkt. 316 at 34-35). This does not mean, however, that Plaintiff's evidence was unrebutted or that the jury could not have credited Dr. Cain's testimony on the issue and drawn reasonable inferences therefrom.

During the Rule 50 motions argued at trial on January 28, 2025, Defendants argued that Plaintiff was not an employee.  (*See* Dkt. 316).  When the Court asked why it should disregard the evidence and conclusions reached during the summary judgment stage on the remuneration issue, counsel for UBNS responded that the documentary evidence relied upon by Plaintiff at trial (exhibits 12 through 15)—the same evidence submitted on the summary judgment motion (*see* Dkt. 206-3 at 32-36)—postdated the termination of his volunteer faculty appointment on August 29, 2014 (Dkt. 316 at 4-6).  Plaintiff's counsel responded to that argument by contending that the exhibits were simply examples of the stipends received by Plaintiff, that Plaintiff's testimony supported a conclusion that the stipends were received during the relevant time period, and that other evidence of remuneration (such as parking and access to the library) supported a conclusion that the requirement of remuneration was satisfied.  (Dkt. 316 at 22-23).[8]

Given the Court's required deference to any credibility determinations by the jury along with any reasonable factual inferences, and viewing the light in the most favorable to Defendants, it cannot be concluded that a rational jury could not have found that Plaintiff failed to establish by a preponderance of the evidence the remuneration prong of the employment test.  Rather, consistent with the defense arguments during the Rule 50 motions, a reasonable jury could have concluded that Plaintiff failed to prove remuneration

---

[8]    As noted below in the discussion of the Rule 59 motion, not once during the Rule 50 arguments (or at any point during the trial) did Plaintiff's counsel contend that remuneration was resolved and uncontested.  Indeed, if he had believed that the issue was resolved on summary judgment, he presumably would have pointed that out during the Rule 50 arguments in response to Defendants' arguments that Plaintiff had not proven remuneration.

during the relevant time period.  Similarly, a reasonable jury could have concluded that the evidence was inconclusive, and thus Plaintiff, with the burden of proof on the issue, did not establish remuneration.  And a reasonable jury could have concluded that Plaintiff was not a credible witness, thus rejecting his testimony that he received various benefits as a volunteer faculty member.

Thus, even if not mooted by the Rule 59 motion outcome, the Court would deny Plaintiff's Rule 50(b) motion seeking judgment as a matter of law in his favor on remuneration.  Under the framework of Rule 50(b), it cannot be concluded as a matter of law that Plaintiff proved remuneration during the relevant time period.

## II.    **Plaintiff's Motion for a New Trial**

### A.    **Legal Standard**

Under Federal Rule of Civil Procedure 59, the Court "may, on motion, grant a new trial on all or some of the issues—and to any party—. . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  "As a general matter, a motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice."  *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (quotation and alterations omitted); *see also Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002) ("[A] decision is against the weight of the evidence, for purposes of a Rule 59 motion, if and only if the verdict is seriously erroneous or a miscarriage of justice[.]").  "The legal standard for granting a new trial under Rule 59(a) calls for deference to jury determinations while affording discretion

to the trial judge to order a new trial in the event of manifest injustice." *Top Ridge Invs., LLC v. Anichini, Inc.*, No. 5:16-CV-76, 2018 WL 11419657, at *1 (D. Vt. May 7, 2018). Whether to grant a new trial under Rule 59(a) is entrusted to the Court's discretion. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 261 (2d Cir. 2002) ("This court reviews the grant of a new trial on the ground that the verdict was against the weight of the evidence for abuse of discretion.").

## B. <u>A New Trial is Not Warranted</u>

Plaintiff bases his motion for a new trial on the ground that the Court made an "unexpected decision" to place the issue of remuneration "back at issue without sufficient notice" and this resulted in substantial prejudice to Plaintiff. (Dkt. 318-10 at 5). Plaintiff alternatively contends that the jury's finding that "Plaintiff did not receive the requisite remuneration or was otherwise not an employee was against the weight of the evidence." (*Id*. at 6). Plaintiff also contends that he received remuneration from Delaware Medical Group, Defendants interfered with Plaintiff's income from Delaware Medical Group, and therefore they may be held liable even with no direct employment relationship between Plaintiff and the University Defendants. (*Id*.). And as at least a third alternative basis for Rule 59 relief, Plaintiff contends that any finding that he was not an employee under the *Reid* factors is contrary to the weight of the evidence. (*Id*.). The Court turns first to Plaintiff's argument about the decision to instruct the jury on remuneration, and then will discuss Plaintiff's remaining arguments.

### 1.    Placing Remuneration "Back" at Issue

Although determining that for purposes of summary judgment the issue of remuneration was not in dispute, summary judgment was denied on the issue of Plaintiff's employment status with the University Defendants and UBNS. Prior to trial, Plaintiff never raised the issue that he now advances—that the summary judgment decision removed the issue of remuneration as a necessary element of Plaintiff's case-in-chief.[9] Likewise, while the parties entered into a stipulation as to certain facts before trial (Dkt. 282 at 5-6; Dkt. 287 at 4-5), that stipulation did not agree that Plaintiff was paid a stipend or otherwise satisfied the element of remuneration. The stipulation did not address the issue. And it was evident from opening statements that the nature of Plaintiff's volunteer faculty appointment and any benefits received would be contested by Defendants. (See Dkt. 307 at 18 (opening statement by counsel for UBNS and Dr. Levy, that volunteer faculty appointment "came with no salary, came with no monetary benefit, no pension, not even an e-mail . . . [n]one of his work was controlled by anybody at UBNS or the Department of Neurosurgery. The evidence will show there was no employment relationship."); 33 (opening statement by counsel for University Defendants that "[v]olunteer faculty

---

[9]    If Plaintiff believed that remuneration had been resolved as a matter of law in his favor for purposes of trial under Rule 56(g), he could have raised the issue through a motion in limine. Cf. S.E.C. v. Retail Pro, Inc., No. 08CV1620-WQH-RBB, 2011 WL 589828, at *3 (S.D. Cal. Feb. 10, 2011) (denying the plaintiff's pretrial motion under Rule 56(g) because "entering such an order would not materially expedite the trial, and such an order would pose a significant risk of confusing the jury and unfairly prejudicing Defendant due to the differing legal standards at issue in the claims decided on summary judgment and those which remain to be decided by the jury"). Plaintiff did not raise the issue at all— pretrial or during trial.

members are just as they sound, they are unpaid volunteers who generally have their own private practice or work in private practice in the relevant medical fields")).

During trial, as noted above, Plaintiff presented evidence of remuneration through his direct testimony and introduction of exhibits—both as to the stipends that he received and other benefits. And as also noted above, testimony was elicited from Dr. Cain addressing these issues, and Dr. Cain's testimony was left unchallenged by Plaintiff.[10] This was all during Plaintiff's case-in-chief.[11]

Then, during argument of the Rule 50 motions, the parties addressed whether remuneration had been proven by Plaintiff. (*See* Dkt. 316 at 2-6; 22-23; 34-35). Never once during that argument—or at any other point during trial—did Plaintiff's counsel contend that the issue was off the table because of the Court's summary judgment decision. And even after the Court denied Plaintiff's Rule 50 motion and reserved decision on Defendants' motion, finding that it was "a very close question as to whether or not an employment relationship could be found by a rational jury under the record here," (*id*. at 37-38), not once did Plaintiff ask to present more evidence—such as rebuttal evidence—

---

[10]    To the extent Plaintiff argues that counsel for the University Defendants "misconstrued Dr. Cain's testimony in his closing argument," (Dkt. 318-10 at 9), this argument not only misstates the record (because Dr. Cain's testimony could reasonably have been interpreted in the way argued by University Defendants' counsel), but Plaintiff does not explain why he failed to object to the closing's alleged misconstruction.

[11]    As noted above, Dr. Cain was called as part of Plaintiff's case-in-chief, and then also testified as a defense witness. But his testimony occurred before Plaintiff rested. Thus, Plaintiff's statement is inaccurate when he suggests that Defendants elicited testimony from Dr. Cain about stipends after Plaintiff rested. (*See* Dkt. 318-10 at 8-9).

to address what he now claims was a cursory presentation[12] of remuneration evidence, *cf.*
*Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir.1986) (the purpose of requiring moving
party to sufficiently articulate grounds for Rule 50(a) motion "is to give the other party 'an
opportunity to cure the defects in proof that might otherwise preclude him from taking the
case to the jury'" (citation omitted)).

The fact that the issue of remuneration was a live controversy was further confirmed
during closing arguments.  Plaintiff's counsel himself spent time arguing to the jury that
there were two parts of the analysis that needed to be proven with respect to employment,
that remuneration was the first part, and that the evidence supported a conclusion that
Plaintiff had proven he received remuneration, including in the form of stipends.  (Dkt. 315
at 52-53; *see also id.* at 17-19 (counsel for University Defendants arguing during closing
that Plaintiff was not employee, including because he received no compensation)).

When the Court prepared the draft final instructions, it proposed an instruction
addressing Plaintiff's employment status that contained the two-part test endorsed by the
case law:  (1) whether Plaintiff received remuneration in some form; and (2) whether the
*Reid* factor test suggested an employment relationship existed.  A draft of the final
instructions and proposed verdict sheet was emailed by the Court to counsel on Sunday,

---

[12]    The Court agrees with the observation by counsel for UBNS and Dr. Levy (*see* Dkt.
322 at 10), that there is something inconsistent about arguing on the one hand that proof
on remuneration would have been more robust if it was known that the issue was disputed,
and on the other hand arguing that the evidence in the trial record (without any reference
to the summary judgment decision) supported a conclusion as a matter of law that Plaintiff
was an employee.

January 26, 2025, at about 11:24 a.m. (Dkt. 324). The charge conference was held the following afternoon, after witness testimony that day and arguments on the Rule 50 motions.

Plaintiff's counsel, Peter Glennon, Esq., now suggests, in a sworn declaration, that he told the Court he was not ready to go forward with the charge conference at that time. (Dkt. 323 at ¶ 15). Yet Mr. Glennon never voiced any objection to holding the charge conference on January 27, 2025, instead responding in the affirmative when the Court asked whether counsel could proceed with the charge conference that afternoon (Dkt. 326 at 7-8) and telling the Court that he was "[h]appy to" identify his questions, concerns, and objections regarding the proposed charge (*id*. at 8).[13] Mr. Glennon engaged in a thorough discussion of the charge during the conference, citing to caselaw supporting his requested changes, and never once mentioned the remuneration instruction. (*Id*. at 8-25). At the end of the charge conference, the Court indicated to counsel that it would recirculate the proposed charge with redline changes reflecting any revisions from the prior draft. (*Id*. at 25). The Court also encouraged the parties to continue to study the documents and report back with any issues. (*Id*. at 24-25).

Mr. Glennon now states, under penalty of perjury in a sworn declaration, that while the "Court told the parties' counsel that it would circulate a redline of the jury instructions [it] . . . did not do so prior to reading the instructions to the jury." (Dkt. 323 at ¶ 17). Mr.

---

[13]    At most, Mr. Glennon stated that his notes were "not perfectly organized," but never voiced any concerns about his preparedness to move forward with the charge conference. (See Dkt. 326 at 8).

Glennon's statement is false. At 5:12 p.m. on January 27, 2025, after the charge conference, the Court circulated a revised proposed charge with tracked changes. (Dkt. 325). Then, the next morning, on January 28, 2025, Mr. Glennon stated that he had "reviewed the red line jury instructions," and he had another suggested revision to the charge. (Dkt. 326 at 28-29). But again, nothing was raised with respect to the portion of the charge addressing remuneration.

Then the following day—on January 29, 2025—after the close of proof, closing arguments, and the reading of the charge to the jury, the Court again asked counsel if they had any objections or exceptions to the charge, and none were raised.[14]

In sum, despite being given multiple opportunities to voice any concerns, Plaintiff never objected to remuneration being included in the jury instructions. *See* Fed. R. Civ. P. 51(c) (requiring objections to jury instructions to be timely stated on the record "distinctly" and set forth the "grounds"); *see, e.g., Emamian v. Rockefeller Univ.*, 971 F.3d 380, 387 (2d Cir. 2020) ("[A] party may not 'rely on her submission of proposed jury instructions that included a[ ] [requested] instruction' to preserve an objection." (citing *Caruso v. Forslund*, 47 F.3d 27, 31 (2d Cir. 1995)). This failure—by itself—forecloses Plaintiff's Rule 59 argument. A party may not circumvent the requirements of Rule 51 by relying on relief afforded under Rule 59. *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) ("Permitting a party out of compliance with Rules 50 and 51 to prevail under Rule 59(e) would render those Rules, which are basic to the conduct of

---

[14]    The transcript of this discussion at sidebar after the reading the charge has not yet been prepared.

federal trials, essentially superfluous.  We are not inclined to endorse such a result except *perhaps* in unusually egregious circumstances, which are not presented in this case." (emphasis in original)).

In support of his contention that the Court failed to give sufficient notice that it was placing the issue of remuneration at issue, Plaintiff relies on *Leddy v. Standard Drywall, Inc.,* 875 F.2d 383 (2d Cir. 1989), where the Second Circuit explained:

> Once a district judge issues a partial summary judgment order removing certain claims from a case, the parties have a right to rely on the ruling by forbearing from introducing any evidence or cross-examining witnesses in regard to those claims.  If, as allowed by Rule 54(b), the judge subsequently changes the initial ruling and broadens the scope of the trial, the judge must inform the parties and give them an opportunity to present evidence relating to the newly revived issue. Failure to do so might in some circumstances cause substantial prejudice.

*Id*. at 386.  In *Leddy*, the trial court had issued partial summary judgment for the defendants on certain claims that predated November 23, 1981, but then put those claims back in the case without ever notifying the parties until after the trial was completed.  *Id*.  While finding error, the Second Circuit concluded that it did not substantially prejudice the defendants because they conceded that "even had they been aware that the pre-November 23, 1981 claims remained in the case, they had no other evidence they would have presented."  *Id*.

Plaintiff also relies on *Alberty-Velez v. Corporacion De Puerto Rico Para La Difusion Publica,* 242 F.3d 418 (1st Cir. 2001), where in a summary judgment ruling the trial court found that the plaintiff was an employee of the defendant and then issued a pretrial order that incorporated that ruling as one of the uncontested facts. *Id*. at 421.  Yet at trial the court allowed evidence that the plaintiff had never been the defendant's

- 17 -

employee and then granted the defendant's motion for judgment as a matter of law on that basis. *Id*. at 421-22. The trial court did not reopen the issue of the plaintiff's status as an employee until presentation of the defendant's case. *Id*. at 425.

But here, Plaintiff's suggestion that the Court's summary judgment decision resolved the issue of remuneration under Rule 56(g), is simply not supported by the record. Rule 56(g) allows a court, when it "does not grant all the relief requested by" a summary judgment motion, to "enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." But no partial summary judgment or other similar order was entered on remuneration. The Court's two-sentence discussion of the evidence of stipends sufficient to satisfy the first prong of the employment analysis, in an 84-page decision addressing the competing motions for summary judgment, does not constitute the requisite order required by Rule 56(g). And even if Plaintiff somehow believed that it did, then he would have presumably stated just that at some point during the trial (especially when it became clear that neither the parties nor the Court were treating the issue as resolved). Put simply, there never was a finding as a matter of law that Plaintiff satisfied either of the prongs of the employment test. And his claims now to the contrary are based on a misrepresentation of the record.

A more analogous case than either *Leddy* or *Alberty-Velez* is *Latin Am. Music Co. Inc. v. Media Power Grp., Inc.*, 705 F.3d 34 (1st Cir. 2013), where on summary judgment the trial court concluded in a copyright infringement case that ownership was undisputed, but it was unclear "whether the district court considered the fact of ownership undisputed

for purposes of the motion only, *see* Fed. R. Civ. P. 56(e)(2), or treated the fact as established in the case, *see* Fed. R. Civ. P. 56(g)." *Id*. at 39.  At trial, "the parties treated ownership as a live issue" and the plaintiff never lodged any objection to the jury instructions on the ownership issue.  *Id*. at 39.  Like Plaintiff here, "[o]nly in its Rule 59 motion for a new trial did [the plaintiff] apprise the district court of its theory that the ownership determination was not for the jury because it was previously determined at summary judgment." *Id*. at 40.  The First Circuit concluded that given the parties' treatment of the ownership issue at trial, "the better view of the record is that the issue had not been decided," but even if the summary judgment order were properly construed as treating ownership as an established fact, "the district court did not abuse its discretion by reviving the issue and presenting it to the jury." *Id*. at 41.  And no formal notice was required because the plaintiff treated ownership as a live issue from the start. *Id.*

In conclusion, the Court rejects Plaintiff's arguments that remuneration was somehow inserted back into the case—it was never removed from the case.  Furthermore, Plaintiff's after-the-fact objections are unpreserved.  Plaintiff's request for a new trial on this basis is supported by neither the facts nor the law, and it is accordingly denied.

### 2.    Plaintiff's Remaining Arguments

Plaintiff alternatively argues that the "jury's finding that Plaintiff did not receive the requisite remuneration or was otherwise not an employee was against the weight of the evidence." (Dkt. 318-10 at 6).  Plaintiff also contends that he received remuneration from Delaware Medical Group, Defendants interfered with Plaintiff's income from Delaware Medical Group, and therefore they may be held liable even with no direct employment

relationship between Plaintiff and the University Defendants. (*Id*. at 6). And Plaintiff contends that any finding that he was not an employee under the *Reid* factors is contrary to the weight of the evidence. (*Id*.).

As discussed above in connection with Plaintiff's Rule 50 motion, the Court rejects the notion that the trial evidence supported a conclusion as a matter of law that the first prong of the employment test—remuneration—was satisfied. Moreover, while the jury concluded that Plaintiff failed to prove the requisite employment relationship, the basis for that decision is unknown. No party requested nor did the Court require the jury to explain its reasoning behind that decision. Thus, the jury's decision on employment status could just as likely have been decided based on their assessment of the credibility of the testimony of Dr. Popat and other witnesses about the *Reid* factors. And as suggested by the Court when reserving on Defendants' Rule 50(a) motion during trial, it was a close call as to whether relief should be granted on that issue in favor of Defendants as a matter of law. (*See* Dkt. 316 at 37-38). In other words, even construing the evidence in favor of Plaintiff, the Court may have concluded that Plaintiff failed to establish the requisite employment relationship. Thus, a finding otherwise was certainly not against the weight of the evidence.

Similarly, Plaintiff's argument about alternative theories of remuneration and employer liability do not justify granting Rule 59 relief. Not only did Plaintiff never advance these arguments at trial, but his contention that he was somehow lulled into not doing so because of his belief that remuneration was not disputed, is unsupported by the record for the reasons outlined above.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion pursuant to Rules 50(b) and 59 (Dkt.

318) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 22, 2025
       Rochester, New York